Roscoe E. Whitehead

*v.*

Holston Defense Corporation and United States Fidelity & Guaranty Company.

(*Knoxville,* September Term, 1958.)

Opinion filed June 5, 1959.

Rehearing Denied July 27, 1959.

Thomas E. Mitchell and Alfred W. Taylor, Johnson City, for appellee. (plaintiff)

Wilson, Worley & Gamble, Kingsport, for appellants. (defendants)

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This case is on appeal from the Chancery Court of Sullivan County wherein Roscoe E. Whitehead obtained an award for total and permanent disability under the Workmen's Compensation Law, T.C.A. sec. 50-901 et seq. The basis of the award was that the petitioner's disability resulted from an occupational disease which arose out of and in the course of his employment at the plant of the Holston Defense Corporation. It was conceded in the court below, and is now admitted at the bar of this Court that the petitioner's condition is total and permanent.

The defendant appealed from the Chancellor's decree. The assignments of error complain as follows:

(1) "The Trial Court erred in holding that the employee's lung disease (pulmonary fibrosis) was a compensable occupational disease under the Tennessee Workmen's Compensation Law, being Chapter 11, Title 50, Tennessee Code Annotated."

(2) The trial court erred in holding that the employer and its insurance carrier had actual notice that the employee was suffering from a occupational disease, and that the employee was excused from giving written notice that he was suffering from such occupational disease.

An "occupational disease" is defined by T.C.A., Title 50, Section 1101, listing nine specific diseases as "occupational" and compensable. In the same section the statute purports to define the term "occupational disease"; that it means one of the scheduled diseases arising out of and in the course of employment. We shall later on in this opinion have occasion to refer to this section. But we deem it unnecessary to copy it here, since it is known to both counsel and the legal profession generally.

The Chancellor's finding of facts is, as follows:

"Roscoe Whitehead testified that he was 58 years old; that he is a married man and that he began work at the Holston Defense Corporation about 1951 and worked until 1957. He testified further that he had begun work about 1942 and worked until '45, at this same corporation. But he testified that a part of his duties were to work in and about hot temperatures where there was coal being burned and where it was blazing and where gases were being emitted. He further testified that he worked in the exhaust room and he stayed in the room a great deal of time and that it required generally his full-time to attend to this furnace, and that artificial gas was coming from the room and from the furnaces. He testified that he worked in the exhaust room and that he could smell gas. It was

his testimony that there was not enough ventilation to completely clear the room of gas.

"The very fact that there was some ventilation in the room or in these rooms, in the exhaust room and in the gas producing room, is evidence that there must have been some elements in there that it was necessary to remove from the room.

"He testified further that he was required to lift iron balls from the top of the furnace, that there were six of these and he looked into the fire and the coal where it was burning, and that as an operator it was necessary for him to do that occasionally to check on the coal and burning fire, and that a yellow gas escaped from these holes."

We find material evidence to support the foregoing decision.

Following the recitation of the evidence given by the petitioner the Chancellor refers to specific statements of witnesses, called by the defendant, which he says corroborated the petitioner.

The lay witnesses for the petitioner, his wife, a Mr. Miller and Mr. Woodward, testified that when he went to work for the defendant in 1951 he was a strong man and a good worker. His neighbor gave him a good character. After he quit work at the Holston Defense Corporation he gave evidence of shortness of breath. His wife testified "he would wheeze at night", and she called a doctor on three or four occasions to relieve his condition. But aside from this there is complete agreement among expert medical witnesses that the petitioner is now disabled permanently, and that it results from a lung disorder.

The Chancellor in his discussion of the facts says, "the real question before the Court is not whether or not this man is in a 100% disabled condition, because that proof is established under this record. The question is *was there a connection between his work, between his occupation and his condition.*" This is the determinative issue.

Turning now to the evidence relating to whether or not there is a causal connection between his occupation and his condition, the Chancellor found, as follows:

"Dr. Blevins who made a very impressive witness in this case by his deposition stated that he was a chemist; that he had done graduate work in chemistry, having received a Master's Degree from Tulane University; and that he was familiar with the production of gas for industrial purposes, and that in his opinion, the circumstances under which this man worked would produce pulmonary fibrosis, and he pronounced that as his condition, that that was what was wrong with him. In addition to his knowledge of chemistry, he is also a practicing doctor of a number of years, a graduate from the University of Tennessee Medical School, and he diagnosed his condition as that outlined and contained in the bill of complaint.

"The proof further shows that these yellow streaks of gas or some chemical substance would come from the furnace. They were seen by a number of people, and this same substance was seen on his clothing by his wife when she laundered it. The evidence, in the record shows that it was on the bed clothing where he slept."

332

■■ The foregoing is supported by the testimony to which the Chancellor refers. Of course, there is contrary evidence. Dr. James E. Shull testified that he found that the petitioner ''has a rather diffuse pulmonary fibrosis of the lungs.'' But that any person could have pulmonary fibrosis whether they were in industry or not. He also testified that in his opinion there were no chemicals in producer gas that could cause damage to the human lung such as the pulmonary fibrosis he found in Mr. Whitehead's case. There is other corroborative medical testimony to the same effect. There is also lay testimony which tends to contradict the petitioner's contention as to the conditions under which he was required to work. But the finding by the Chancellor upon these controversial issues, when supported by any material evidence, is conclusive upon this Court. We think his finding and conclusions are supported by substantial evidence.

The counsel for the appellant has been most fair in arguing the issues now before us. Following the citing of T.C.A. sec. 50-1101, supra, it is said, ''So far as we have been able to determine in our research of this problem, we find no reported case in Tennessee dealing with a non-scheduled occupational disease. This fact is of significance only in connection with the evidence required to prove the existence of an occupational disease as defined and limited by Tennessee Code Annotated Section 50-1101.''

■■ While it is true the Legislature listed nine occupational diseases as compensable, yet a liberal interpretation of this section does not require that the disease from which an employee suffers must be proved to that

degree of scientific exactness as to classify it as one of these listed occupational diseases. Medical science, great and important as it is in serving humanity, is not an exact science. Moreover men of science have not as yet given a name to every human ailment. Some diseases are so closely related to certain classified diseases that they must be denominated as "occupational", provided the elements of causation can be connected, either directly of indirectly, with the conditions under which an employee is required to work. But limiting the petitioner's condition to one of the nine listed diseases as occupational, we think T.C.A. sec. 50-1101 is broad enough to include it as being compensable. Thus when the statute provides " 'occupational disease', means one (1) of the scheduled diseases arising out of and in the course of emplyoyment", the legislative intent was to include such related physical ailments in causative effect as being compensable. *McCann Steel Co. v. Carney,* 192 Tenn. 94, 237 S.W.2d 942.

In construing this section of the Code, as to whether an employee's injury is compensable as related to an occupational disease, this Court held in *Buck & Simmons Auto & Electric Supply Co. v. Kesterson,* 194 Tenn. 115, 250 S.W.2d 39, 40, that the 1947 amendment to our statute broadened the terms of the Act. Thus it is held:

"* * * By so adding these diseases the Act is not limited to these specified occupational diseases if the disability of the injured employee is a result of an injury arising out of and in the course of his employment."

In considering whether or not the petitioner's lung disease resulted from the conditions under which he

worked, and thus arose out of his employment, we think when the entire 1947 amendment to the Act, as carried in section 50-1101, T.C.A., is liberally construed the petitioner's condition is compensable as an occupational disease. Cases cited prior to the foregoing amendment to the statute are not applicable to the case at bar. Our cases where the employee suffered from "silicosis" are not applicable because they are plainly occupational diseases. Moreover we are mindful that subsection (6) is applicable here: "it (the occupational disease) must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction." With the foregoing section liberally considered we think the petitioner's disability is compensable as an occupational disease.

The final question for determination is the alleged failure of the petitioner to give written notice that he was suffering from an occupational disease. In responding to this problem the Chancellor held as follows:

"The evidence is clear that the Medical Department through Dr. McConnell, did have notice of the complainant's condition. The proof shows that Dr. Annabelle McConnell, advised the complainant on three different occasions to go to his private family doctor and have X-rays made for a condition of his lungs. But the proof further shows that this information was known as far back as 1953 by the defendant.

"The proof further shows in this record and is not disputed, that the complainant is an unlearned man in medicine; that he was not informed of his true condition and he was not told what was wrong with him. He

testified positively that he did ask Annabelle McConnell, the company doctor, what was wrong with him and that she refused to tell him what his condition and trouble was.

"As a matter of law, if a company doctor conceals and does not reveal to the complainant his true condition, then that is a concealment and they are guilty of having complete and full knowledge of his condition and concealing the same from the complainant. There is no doubt in this record but what the Holston Defense Corporation and its insured had complete and full knowledge, notice that this man had a condition of his lungs."

 We know as an undisputed historical fact that many occupational diseases are not revealed and are not known at their onset. Even medical experts are slow in diagnosing such diseases. An employee is not expected, certainly not required, to institute suit until he has reliable information that his condition is the result of an occupational disease. The proof shows that the employer's medical staff knew of his condition and concealed it from his. They knew of his condition as far back as 1953.

██ The assignments of error are overruled and the Chancellor's decree is affirmed. The cause is remanded to the Chancery Court for such further orders as may be necessary to enforce the said decree.