Tennessee Tufting Co. et al.

*v.*

Mary Potter.

(*Nashville,* December Term, 1959.)

Opinion filed April 6, 1960.

Rehearing denied June 6, 1960.

See 337 S.W. 2d 601.

Eugene D. Jackson, Jr., Nashville, for Mary Potter.

Frank C. Gorrell, Bass, Berry & Sims, Nashville, for Tennessee Tufting Co. and St. Paul Fire and Marine Ins. Co.

Glasgow & Adams, James M. Swiggart, Nashville, for Travelers Ins. Co. and Tennessee Tufting Co.

Mr. Justice Felts delivered the opinion of the Court.

This suit was brought by Mary Potter against her employer, Tennessee Tufting Company, and its two successive insurers, St. Paul Fire and Marine Insurance Company (St. Paul) and The Travelers Insurance Company (Travelers), for workmen's compensation for disability to each of her wrists and hands arising out of and in the course of her employment.

Defendants, by separate answers, denied petitioner had suffered any compensable disability, and pleaded the statute of limitations of one year; and each of the insurers further pleaded that if there was any liability, it arose during the other's carriage of the risk, and each quoted and relied on our statute (T.C.A. sec. 50-1106), which is as follows:

"When an employee has an occupational disease that is covered by the Workmen's Compensation Law, the employer in whose employment he was last injuriously exposed to the hazards of the disease, and the employer's insurance carrier, if any, at the time of the exposure, shall alone be liable therefor, without right to contribution from any prior employer or insurance carrier."

Petitioner was employed as operator of a sewing machine and worked for employer, except when temporarily disabled, from August 1952, until August 4, 1958, when she became unable to work and was discharged. She brought this suit October 29, 1958. The employer's workmen's compensation insurer during the part of this period from 1954 to May 2, 1958, was St. Paul, and thereafter was Travelers.

The Trial Court found petitioner had suffered a "33-1/3 per cent permanent partial disability" to each of her hands "in the course of her employment"; that such disability "was substantially and perceptibly and observably in existence prior to May 2, 1958"; and the court awarded her a judgment against the employer and its insurer, St. Paul, and dismissed the case as to Travelers.

The employer and St. Paul joined in a motion for a new trial upon the grounds (1) that the judgment was not supported by the law and the evidence; (2) that the court erred in rendering judgment against St. Paul and in dismissing the case as to Travelers. The motion was overruled, and the employer and St. Paul both appealed in error, but only St. Paul has assigned any error here. It does not, however, question petitioner's right to recover or the amount of the judgment awarded her.

St. Paul asserts that "the sole question presented by this appeal is which" of the two insurers is liable to petitioner; and it contends that since she was "last injuriously exposed to the hazards of the [her] disease" during the period from May 2, to August 4, 1958, and since Travelers was the insurer during that period, it is,

by force of this statute, made solely liable for compensation to her, without any right to contribution.

Travelers says: "One of the difficulties in St. Paul's position is that no appeal was taken from the holding of the Trial Court that Travelers was not liable and was dismissed."

■ As stated, the main grounds of the employer's and St. Paul's motion for a new trial were that the Trial Court erred in not applying the statute (T.C.A. sec. 50-1106), and in not holding Travelers liable instead of St. Paul; and their appeals in error from the judgment below brought up this question as between St. Paul and Travelers. Cf. *Bituminous Gas. Corp. v. Smith,* 200 Tenn. 13, 288 S.W.2d 913.

Travelers further contends that petitioner's disability arose more than a year before she sued and her suit was barred by the statute of limitations; that the evidence failed to prove that her disability was caused by a compensable occupational disease; and that in the absence of any showing of such disease, the above statute has no application.

The proof showed petitioner operated a sewing machine for her employer, making rugs and bath mats. She and the other employees were on "piecework," and so were "working fast," with their "hands going all the time." This work of operating the machine required petitioner to pick up materials and to turn and pull them, and this put a constant strain on the muscles and tendons of her wrists and hands.

This continuous strain on the muscles and tendons caused "knots" to develop on petitioner's right wrist in

May 1955. This condition was extremely painful and disabled her. Her employer sent her for treatment to its physician, Dr. Duncan Eve. According to its report to the Department of Labor, Workmen's Compensation Division, put in evidence without objection, Dr. Eve diagnosed her trouble as "Dequervains disease" and advised an operation. The knots were removed by an operation, and a few weeks later she was able to return to the work.

In November 1957, she still operating the machine, the same sort of trouble, or "knots," developed on her left wrist. Her employer again sent her to its physician for treatment. This physician, Dr. Wilbur, found that the "knots" had been caused "from using the machine"; and he diagnosed her trouble as a "cystic mass of dorsum of left wrist"; and, according to his report, this mass was removed by surgery and found to be a "ganglion cyst."

Petitioner was paid for the time off, as she had been during her prior disability, and was able to go back to operating the machine in January 1958. In April or May 1958, the same sort of knots recurred on both her wrists. She continued to operate the machine, the wrists grew progressively worse; and about the middle of July she was removed from the machine and put on the work of "clipping rugs." This only worsened her disease and by August 4, 1958, she was unable to work any longer, and was discharged.

As we have seen, the Trial Court found that petitioner had suffered a permanent disability, and though he did not characterize her trouble as an occupational disease, he did find that it arose out of and in the course of her

employment and was compensable. And her disease was diagnosed by Dr. Eve as "Dequervains disease," which is "tenosynovitis," which is described as an "inflammation of the tendon sheaths of the wrists and hands."

It is true the other doctor diagnosed petitioner's trouble as a "ganglion cyst"; but as we understand the testimony, there seems to be little or no difference between the two diagnoses; for both referred to the same condition which first occurred in 1955, and recurred at all the other times stated, and was a thickening and growth of the sheaths over the muscles of the wrists and hands, causing "an inflammation of the tendon sheaths of the wrists and hands," which is "tenosynovitis."

■ Tenosynovitis is one of the compensable occupational diseases scheduled in our statute (T.C.A. sec. 50-1101). Liberally interpreted, this statute means that a compensable occupational disease is either (1) one listed therein, or (2) one which is so closely related as to be classified with it, and is an incident to the conditions under which the work is performed, and is directly and proximately caused by the hazards of such employment. T.C.A. sec. 50-1101. *Whitehead v. Holston Defense Corp.*, 205 Tenn. 326, 326 S.W.2d 482.

■ So we think the only reasonable conclusion from the proof is that petitioner's disease was tenosynovitis and was a compensable occupational disease, within the meaning of our statute (T.C.A. sec. 50-1101). *Holeproof Hosiery Co. v. Wilkins,* 194 Tenn. 683, 254 S.W.2d 973; *Whitehead v. Holston Defense Corp., supra.*

■ We also think there is no merit in The Travelers' contention that petitioner's suit was barred by the one-year statute of limitations. In such a case as this, the

statute starts to run from the date when the cause of action accrued, which is the date when claimant has actual or constructive knowledge that his disability is due to a compensable disease. *Wilson v. Van Buren County,* 198 Tenn. 179, 278 S.W.2d 685; Note, 8 Vand.L. Rev., p. 161; *Holeproof Hosiery Co. v. Wilkins,* supra; *Griffitts v. Humphrey,* 199 Tenn. 528, 288 S.W.2d 1. *Norton v. Standard Coosa-Thatcher Co.,* 203 Tenn. 649, 315 S.W.2d 245.

■ While petitioner was temporarily disabled, first in May 1955 and again in November 1957, she was paid for such temporary disability and returned to work. Her permanent disability seems to have begun to develop in April or May 1958, and grew steadily worse until she was discharged on August 4, 1958, which was only a few months before she brought suit in October 1958.

This brings us to the question of which of the two successive insurers is liable to petitioner. As we have seen, the Trial Court found that since her disability came into existence before May 2, 1958, while St. Paul was insurer and before Travelers became the insurer, St. Paul was liable and Travelers was not. That is, the Trial Court's view was that the decisive test was when the disability came into existence.

In so holding, we think the learned Trial Judge overlooked or misappreciated the effect of the statute (T.C.A. sec. 50-1106), above quoted. It makes the test not when the disability came into existence, but when the claimant was *"last* injuriously exposed to the hazards of the disease," and says that the employer and its insurer, during the time of such exposure, "shall alone

be liable therefor, without right to contribution from any prior employer or insurance carrier.''

Thus, the very purpose of the statute was to fix a clear and definite test for determining which employer and insurer was liable, and to avoid the issue when the disease or disability came into existence, which issue often involves difficulty, uncertainty and speculation. *Wilson v. Van Buren County,* supra, 198 Tenn. 184, 278 S.W.2d 687.

 The proof shows that petitioner was *"last* injuriously exposed to the hazards of the disease'' during the period from May 2nd to August 4, 1958, while Travelers was the insurer. So, by force of the statute, Travelers is made solely liable to petitioner, without any right to contribution from any prior employer or insurer.

So much of the judgment of the Circuit Court as awards a recovery to petitioner against her employer is affirmed, but so much of the judgment as awarded her a recovery against St. Paul and dismissed her suit as to Travelers is reversed, and a judgment will be entered here for her against Travelers for the amount of the judgment below. The costs of the appeals in error are adjudged against the employer and Travelers; and the cause will be remanded to the Circuit Court for further proceedings not inconsistent with this opinion.

### On Petition to Rehear

FELTS, JUSTICE.

By petition to rehear, The Travelers complains of our holding that it, by force of the statute, is solely

liable to the employee because it was the insurer during the period (May 2nd to August 4, 1958) while she was "*last* injuriously exposed to the hazards of the disease" (T.C.A. sec. 50-1106).

It is urged that this holding is "directly opposed to" the Trial Judge's finding that "the disability complained of was substantially and perceptibly and observably in existence prior to May 2, 1958, and that the cause or causes of said disability occurred prior to May 2, 1958"; that this finding is supported by material evidence; and that under the mode of limited review in workmen's compensation cases, we are bound by this finding.

This finding, however, was not a finding as to when the employee was "*last* injuriously exposed to the hazards of the disease," but merely a finding that "the disability complained of," and its cause or causes, began before May 2, 1958. It was doubtless meant to be a finding that her "*disease,*" and its cause or causes, began before May 2, 1958. Otherwise, it is without support in the proof.

The undisputed proof was that she had a compensable occupational disease, caused by her work on the machine; that the disease, accompanied by recurring periods of temporary disability, began prior to May 2, 1958, and continued on to August 4, 1958, when it resulted in her permanent disability, "the disability complained of." That is, she was exposed to the hazards of her disease during the whole of this period, but was "*last* injuriously exposed to such hazards" from May 2 to August 4, 1958, during the period The Travelers was the insurer.

■ By the plain terms of the statute, it makes the test not when the disease, its cause or causes, or its resulting temporary disability, came into existence, but when the employee was *"last* injuriously exposed to the hazards of the disease," and provides that those who were the employer and its insurer during the time of such exposure, "shall alone be liable" to the employee, "without right to contribution from any prior employer or insurer" (id., sec. 1106). *Wilson v. Van Buren County,* supra, 198 Tenn. 178, 278 S.W.2d 685.

■ The purpose of the statute was to fix a definite time for determining which employer and insurer is liable, and to avoid inquiry as to when the disease, its cause or causes, or the resulting temporary disability, came into existence, which are often questions too difficult, uncertain, or speculative, to admit of satisfactory proof. *Wilson v. Van Buren County,* supra.

■ The petition to rehear points out no new matter of law or fact overlooked, but only reargues matters which counsel insists were improperly decided after argument and full consideration. Such a petition will be denied. *Louisville & N. Railroad Co. v. United States Fidelity & Guaranty Co.,* 125 Tenn. 658, 691, 148 S.W. 671, 680; *Gulf, M. & O. R. Co. v. Underwood,* 182 Tenn. 467, 476, 187 S.W.2d 777, 780; *Colbaugh v. State,* 188 Tenn. 103, 112, 216 S.W.2d 741.

The petition to rehear is denied at petitioner's cost.