A. C. Lawrence Leather Company, Plaintiff in Error,

*v.*

Voss Britt, Defendant in Error.

414 S.W.2d 830.

(*Knoxville*, September Term, 1966.)

Opinion filed May 5, 1967.

Petition to Rehear Denied September 29, 1967.

EDWARD F. HURD, Newport, for plaintiff in error.

JOHN C. PORTER, Newport, for defendant in error.

MR. SPECIAL JUSTICE WILLIAM J. HARBISON delivered the opinion of the Court.

This is a workmen's compensation case in which the employee was awarded certain benefits for temporary total disability, permanent total disability, and medical expenses. The employer was allowed credit for certain benefits paid to the employee during one of his periods of disability. The employer has appealed to this Court and has assigned errors with respect to the final award. For convenience the parties will be referred to in this Court as they appeared in the trial court.

The basic facts of the case are undisputed. Petitioner, Voss Britt, was employed by the A. C. Lawrence Leather Company for approximately thirty years. He was engaged in heavy manual labor, and during much of the time his job consisted of the handling of animal hides which were in the tanning process. In the performance of this work it was necessary for him to take hold of the hides with his hands and fingers, to exert a great deal of pressure with his fingers on the hides which were wet and slippery, to lift the hides from a vat, and to sew them together. In this work he was assisted by a fellow employee. The hides weighed from fifty to one hundred pounds each, and the petitioner and his fellow worker would handle as many as one hundred hides per hour on some occasions.

In December, 1961, the petitioner was unable to continue his work at the tannery due to the development of a condition in his left wrist which was caused by pressure on the median nerve. The thumb and some of the fingers on the left hand became numb and stiff. Petitioner sought the advice of a general practitioner in Newport, Tennessee, and was led to believe, according to petitioner's testimony, that the condition in his left hand was arthritis, a condition which is normally not compensable under the Tennessee Workmen's Compensation Act. Petitioner was referred by the general practitioner to an orthopedic specialist in Knoxville, Tennessee, Dr. Sidney L. Wallace. Dr. Wallace testified for the petitioner in this case, and testified that the petitioner was suffering from a condition in his left hand known as a "carpal tunnel syndrome." This condition results in pressure being exerted upon one of the major nerves to the hand as it passes to the wrist in a tight compartment called the

carpal tunnel. Through this tunnel pass the median nerve and nine tendons and their sheaths. The nerve becomes compressed if there is any swelling of the contents of this compartment. Usually the little finger is unaffected, but numbness of the other fingers, gradual swelling and weakness of the hand follow if the condition persists. Normally surgical cure is rapid and dramatic when the carpal tunnel is opened and the ligaments overlying the nerve are divided.

Dr. Wallace operated on the petitioner's left hand in February, 1962, but because petitioner had some recurrence of his symptoms, the doctor again performed surgery on the left hand on July 4, 1962. The surgeon felt that the second operation was quite successful, and the petitioner was discharged to return to work in August, 1962, having been off from work since December, 1961. At this time petitioner's right hand was not affected, and he was able to return to work in August, 1962, and to work regularly for a period of nearly three years, until July, 1965.

During the period of time when he was off from work in late 1961 and during the first months of 1962, petitioner was paid benefits by his employer which exceeded those allowed under the Workmen's Compensation Law. Petitioner testified that he did not make a claim for workmen's compensation at this time, because he thought he had arthritis. He did testify, however, that Dr. Wallace had advised him in 1962 that he had a "carpal tendon." He testified:

Q. Now did Dr. Wallace tell you that when he worked on your left hand the first time?

A. Yes.

As stated, petitioner returned to work in August, 1962, and worked for almost three years consecutively, but on July 28, 1965, he quit work due to the fact that his right hand was giving him trouble similar to that which he had experienced in the left hand in 1962. In August, 1965, the petitioner was seen by Dr. Wallace, and, upon examination, Dr. Wallace confirmed that there was a compression of the median nerve on the right hand similar to that experienced in the other hand three years previously. Dr. Wallace performed surgery to release the ligamentous pressure, and he subsequently followed petitioner until October, 1965. At that time the petitioner's symptoms had recurred and the doctor recommended further hospitalization and re-evaluation with possible additional surgery. The petitioner did not return for further evaluation or hospital treatment. Dr. Wallace testified that he felt that the petitioner's strenuous work produced

> * * * fixation of the wrist and pinching of the thumb against the finger. I felt that this certainly was a substantial reason for having the symptoms and possibly for having some recurrence of the symptoms.

Petitioner testified that he was not advised by Dr. Wallace until September 3, 1965, that he had any condition other than arthritis, although he previously had stated that he received a diagnosis of "carpal tendon" in 1962. There is in the record a handwritten letter from the petitioner to the employer, under date of September 14, 1965, in which petitioner states that Dr. Wallace "told me what was wrong with my hands and arms—he said it was carpal tunnels which was caused by the work I have been doing." Petitioner filed this suit on October 6, 1965.

The suit as filed did not allege an occupational disease, but alleged an accidental injury occurring on July 28, 1965. The facts alleged in the petition, however, were that petitioner had worked for many years using his hands in the lifting of heavy, slick hides, and it was alleged that the petitioner overworked or strained the muscles and ligaments in both hands and arms, and as a result thereof he suffered a great deal of pain and was unable to continue with the work at the defendant's plant.

The petition alleged that the petitioner had been advised by ''the company doctors'' that petitioner had arthritis, but the proof wholly failed to sustain this allegation, the proof being that the company retains no doctor and that any advice given to petitioner was by a physician of his own choosing. The petition alleged that the claimant had been misled by the employer, its agents and representatives, as to the cause of the injury to his left hand in 1961, so as to prevent the operation of the statutes regarding notice and the filing of suit.

The employer denied that the petitioner had sustained any accidental injury. It alleged that the petitioner had been paid benefits in excess of those allowable under the Workmen's Compensation Act for his 1961 disability. The employer denied ever misleading petitioner in any way and plead the statute of limitations and lack of notice with respect to any claim arising out of the 1961-62 disability. The employer alleged, and the proof subsequently showed, that from July 28, 1965 until September 13, 1965, the employer again paid the employee non-compensation disability benefits by reason of the petitioner's being off from work during that period, but the employer terminated these benefits upon receipt of written notice from

the petitioner that he was claiming workmen's compensation benefits, as above set out.

The general practitioner who had treated petitioner did not testify in this cause. Petitioner was examined by an orthopedic specialist at the request of the employer, and this specialist, Dr. Carlson, testified that the petitioner had a carpal tunnel syndrome, together with degenerative arthritis. He estimated that petitioner had ten per cent permanent partial disability to the right hand, and five per cent permanent partial disability to the left hand, being equivalent to eight per cent permanent partial disability to the body as a whole. Dr. Carlson's testimony is the only medical proof in the record as to the degree or extent of any disability remaining in the left hand.

Petitioner himself testified that he was unable to close his right hand, or to make a fist, and testified that he was unable to do any work involving any substantial use of his hands. In this testimony he was corroborated by his wife. Both he and his wife admitted that his left had was not as disabled as his right hand. Dr. Wallace testified that he felt that the surgery on the left hand had helped that hand a great deal, and he felt that further surgery on the right hand might be beneficial. Dr. Wallace was of the opinion that petitioner did not have any arthritis in his hands. He testified that in his opinion the petitioner should not continue to do the type of work which he had previously done for his employer.

Dr. Wallace testified that he could find nothing objectively wrong with petitioner's left hand at the time he last examined the petitioner, but he said that petitioner said "he was having some loss of feeling in the hand. All the testing that you do for these were negative."

Dr. Wallace testified that petitioner was "fairly comfortable when he is not working. This is the impression he left with me." In stating that petitioner should not go back to the same type of work which he had been doing, he said:

I would be somewhat afraid that he might have recurrence again. I would recommend that he do something else after his operation is over.

The doctor testified that surgery usually relieves the symptoms of a carpal tunnel syndrome, but

* * * for some reason this patient just has not responded the way most of ours do. Of course, I have not had anybody doing the type work that he has been doing. This is an interesting fact.

In response to a question from petitioner's attorney, however, Dr. Wallace said that petitioner's hands

* * * are not worn out. It is not arthritis or anything like that. It's just a simple problem of pressure on a certain nerve, the same you get in the neck or back. You relieve the pressure and you obtain relief.

At the conclusion of all of the evidence the trial judge took the case under advisement and subsequently filed a memorandum opinion, in which he found that the petitioner had suffered an occupational disease,

* * * that it arose out of and in the course of his employment with defendant and that the petitioner was wholly unable to do any kind of work for profit.

The trial judge found that the combined injuries to the two hands of petitioner affected his body as a whole, and that he was entitled to an award of total permanent disability. In addition, the trial judge awarded temporary

total disability benefits for the period of time when petitioner was off from work from December 23, 1961 until August, 1962, and for the period beginning July 29, 1965 until September 3, 1965. He also allowed certain medical benefits in connection with each period of disability. Later he modified the first temporary total disability award by allowing the employer credit for certain benefits paid to petitioner during that period.

The trial judge recognized that a "troublesome question" was presented over the disability during 1961 and 1962 with respect to the questions of notice and the statute of limitations. He found that the petitioner did not know until September 3, 1965 that the trouble with his left hand was caused by his work.

■ ■ We agree with the conclusion of the trial judge that the petitioner's disability arose out of and in the course of his employment, and we are of the opinion that the same constituted an accidental injury within the meaning of that concept as explained in the case of *Brown Shoe Company v. Reed,* 209 Tenn. 106, 350 S.W.2d 65 (1961). There the Court held that a repeated trauma to the ulnar nerve, caused by constant and continued maneuvering of the left arm of petitioner by placing considerable strain thereon, constituted an accidental injury within the meaning of the Tennessee Workmen's Compensation Act. The present case is also somewhat similar to that of *Tennessee Tufting Co. v. Potter,* 206 Tenn. 620, 336 S.W.2d 539, 337 S.W.2d 601 (1960), where an occupational disease known as tenosynovitis, or a condition very similar thereto, was found to have caused permanent partial disability. We are also of the opinion that there is ample material evidence to support a find-

ing that the petitioner has sustained loss of use of his right hand as a result of this compensable injury, and that he is entitled to permanent partial benefits for the loss of use of his right hand, together with temporary total disability benefits from July 29, 1965 through September 3, 1965, and medical expenses incurred in the treatment of his right hand.

We are not able to agree with the conclusions of the trial judge, however, as to the questions of notice, statute of limitations, and degree of disability with regard to the injury to the left hand and the period of temporary total disability from December, 1961 until August, 1962. In the first place, there is no material evidence in the record to support an award of total loss of use of the left hand. Further, there is no evidence in the record whatever that the employer misled the petitioner or deceived him in any way concerning the compensability of the disability suffered in 1961 and 1962. The allegations of the petition are wholly unsupported by proof. In addition, there is no proof that Dr. Wallace at any time ever advised the petitioner that he had arthritis. Dr. Wallace testified that the petitioner did not have arthritis, and from the beginning he has diagnosed the petitioner's disability as a carpal tendon syndrome. Indeed, as we have previously noted, petitioner himself testified that during 1962 Dr. Wallace had advised him that he had a "carpal tendon." Later, in September, 1965, petitioner used similar language when he wrote the employer that he was claiming a compensable injury. In the letter he said he was suffering from "carpal tunnels."

With respect to the 1961-1962 disability, petitioner was asked:

Q. No claim was made that this was an accidental injury by you or anyone else, that episode in 1961 and 1962?

A. If they had asked Dr. Wallace's verdict it would have been. They didn't ask him for no report.

Q. Well, Dr. Wallace was your doctor, wasn't he?

A. Yes sir.

 We are of the opinion that the petitioner is not entitled to recover for disability to his left hand by reason of his failure to give notice that he was claiming a compensable injury in connection with the 1961-62 disability, and by reason of the operation of the statute of limitations. Whether or not there is a reasonable excuse for failure to give notice required by the statute is a question of fact, but in the present case the record reflects the petitioner was able to file a claim with his employer for other benefits related to his disability, that he was advised that he had a "carpal tendon" in 1962, by Dr. Wallace, and that he was in no sense misled or deceived by his employer. We are of the opinion that he was required to give notice to his employer and to bring suit within the statutory period for the disability to his left hand.

This Court has just considered the question of when the statute of limitations begins to run in occupational disease cases, in the case of *Tennessee Products and Chemical Corporation v. Reeves,* 220 Tenn. 148, 415 S.W.2d 118, April 20, 1967. In that case, after consideration of a number of previous decisions, the Court said:

It results before the statute of limitation in occupational disease cases begins to run there must be: First, an incapacity for work; Second, either actual or con-

structive knowledge an occupational disease is the cause of the incapacity for work. In relating the incapacity for work to the disease an employee is required to exercise reasonable care and diligence; and if he does not he could be charged with constructive notice.

In that case the employee in the Fall of 1963, made application to the Social Security Administration for disability benefits. He had previously noticed a shortness of breath while working, but had not sought medical aid. He was found totally disabled by the Social Security Administration in December, 1963. In February, 1964, he made application to the Veterans Administration for a disability pension, and this was granted to him in April, 1964. At no time had he ever been informed by his family physician, who had treated him on several occasions, that he was suffering from the occupational disease of silicosis. Early in 1965 he undertook to obtain a medical report from the Social Security Administration, but this was refused. He then undertook to obtain a medical report from his family physician, but this was refused. He was again referred to the Social Security Administration, which for the second time declined to give him a copy of any medical report. It was not until April 8, 1965, that he was for the first time told that he had an occupational disease, silicosis, and he filed suit within one year from that time.

The chancellor found that the petitioner could not by the exercise of reasonable care have determined the existence of a disease earlier than April, 1965, because he had never been able to get a report from any of the governmental agencies or their physicians concerning his condition, despite repeated efforts. Also, his own physician had refused to give him the results of his

examination. The chancellor under these circumstances found that the petitioner had a reasonable excuse for not giving notice and for not having earlier ascertained that he had an occupational disease, although, of course, he had knowledge that he was disabled from work.

In the present case the employee knew that he had a disability during 1961 and 1962. He testified that he was told by a family physician that this was caused by arthritis. He also testified, however, that Dr. Wallace, the orthopedic surgeon and specialist, at that time told him that he had a "carpal tendon." Petitioner apparently did not make any further inquiry from Dr. Wallace at that time concerning the meaning of this condition, but there is no testimony that Dr. Wallace ever misled the petitioner in any way or told him that he had arthritis or any other condition except that of a carpal tunnel syndrome. Petitioner, in 1965, used the information given him by Dr. Wallace at that time as the basis for making a claim for workmen's compensation and we are of the opinion that this same information was equally available to him with reasonable care and diligence in 1962.

Accordingly, it results that the judgment of the trial court will be modified so as to disallow benefits for disability to the left hand, to disallow temporary total disability benefits for the period from December 23, 1961 through July 31, 1962, and to disallow medical, travel and hospital expenses in connection with treatment received by petitioner during that period. Petitioner is awarded benefits for loss of use of his right hand in accordance with the provisions of T.C.A. sec. 50-1007, being sixty-five per cent of his average weekly wages during a period of one hundred fifty weeks, together with medical and travel expenses as allowed by the trial judge in connec-

tion with the disability to his right hand and the treatment thereof, and temporary total disability benefits from July 29, 1965 through September 3, 1965, in the amount of $195.42.

As modified, the judgment of the trial court is affirmed at the cost of the defendant.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.

### On Petition to Rehear

MR. SPECIAL JUSTICE WILLIAM J. HARBISON.

There has been filed on behalf of the petitioner an earnest petition to rehear in this cause, and we have carefully re-examined our opinion and the record in this cause. After doing so, we adhere to the conclusions stated in our original opinion.

In the petition to rehear the Court is taken to task because of statements appearing in the opinion that there was no evidence that the employer in any way misled the petitioner, or deceived him. It is urged in the petition to rehear that this is an entirely immaterial issue. We point out, however, that this issue was injected into the case by the petitioner himself, in his sworn petition for workmen's compensation, and was categorically denied by the defendant. Throughout the petition, it was alleged that the petitioner was treated by doctors furnished by the employer, and that various diagnoses were rendered by the ''company doctor.'' It was further alleged that the defendant

* * * by its agents and representatives, deceived and misled petitioner as to the cause of his injuries to his hands in 1961. As a result thereof, petitioner believed

and relied upon the advice of the defendant's doctors and defendant's personnel, to his injury and detriment.

Any statement made by the Court in its opinion on this issue was in response to these rather serious allegations made in the petition.

The petition to rehear is denied at the cost of petitioner.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.