630 A.2d 485

**AL'S RADIATOR SERVICE, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (JORDEN'S RADIATOR SERVICE and Estate of Charles L. Tucker), Respondents.**

Commonwealth Court of Pennsylvania.

Argued June 14, 1993.

Decided Aug. 2, 1993.

434

Daniel D. Harshman, for petitioner.

Roy F. Walters, Jr., for respondents.

Before PALLADINO and PELLEGRINI, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Al's Radiator Service (Al's Radiator) appeals from the order of the Workmen's Compensation Appeal Board (WCAB) that modified the referee's order by imposing liability upon Al's Radiator for the occupational disease sustained by Charles L. Tucker. We affirm.

From 1975 until early March 1986, Tucker worked for Jorden's Radiator Service (Jorden's) as a radiator repairman. This job required Tucker to use lead-containing solder. Tucker continued working at Jorden's until that company went out of business.

On March 10, 1986, Claimant began working for Al's Radiator, also as a radiator repairman exposed to lead. In April 1986, Al's Radiator requested Tucker to take a blood test. The results demonstrated a high content of lead. Tucker terminated his employment on May 2, 1986.

On October 20, 1986, Tucker filed workmen's compensation occupational disease claims against both of his former employers. The petitions alleged that Tucker suffered from "poisoning by lead" in his occupation, thereby claiming benefits under Section 108(a) of The Pennsylvania Workmen's Compensation Act (Act).[1] Both employers filed timely answers, denying the allegations of the petition. The petitions were consolidated for purposes of hearing before the referee. Tucker presented the expert medical testimony of Michael J. Hodgson, M.D., who diagnosed Tucker as having an elevated body burden of lead caused by his exposure to lead fumes during the repair of radiators. Dr. Hodgson testified that this exposure constituted an occupational hazard of contracting a disease associated with lead exposure. Dr. Hodgson testified that because of the large body burden of lead, Tucker was disabled. Dr. Hodgson did not opine concerning which employment caused Tucker's elevated body burden of lead. The referee made the following pertinent findings of fact:

> 7. Based primarily on the testimony of the claimant and the testimony of Dr. Michael J. Hodgson, a board-certified physician in internal medicine and occupational medicine, it is found as a matter of fact that the claimant sustained a

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 27.1(a). Section 108 of the Act provides in part:

> The term "occupational disease," as used in this act, shall mean only the following diseases.
>
> (a) Poisoning by arsenic, lead, mercury, manganese, or beryllium, their preparations or compounds, in any occupation involving direct contact with, handling thereof, or exposure thereto.

compensable occupational disease in the form of a substantially elevated body burden of lead. As a result, he was disabled from returning to work doing radiator repair work or any other work with lead or lead containing products. This was caused by the claimant's total and cumulative exposure to lead with both employers. Dr. Michael Wald, who is board-certified in internal medicine and pulmonary medicine testified on behalf of the defendant, Jorden's Radiator Service. Dr. Charles L. Winek, a board-certified toxicologist, testified on behalf of the defendant Al's Radiator Service. Both defendants' doctors stated that as a result of the high body lead burden, claimant was disabled from returning to his employment as a radiator repairman or any other employment that would expose the claimant to further lead toxicity. Dr. Winek was of the firm opinion that the claimant's exposure at Jorden's Radiator Service was of greater significance in contributing to the claimant's overall body lead burden.

\* \* \* \* \* \*

9. The claimant had the longest period of exposure within the 300 weeks prior to disability as an employee of the defendant, Jorden's Radiator Service.

10. The claimant's last employer was Al's Radiator Service, and was employed by this defendant for a period of approximately forty working days.

■ The referee, relying on Dr. Hodgson's testimony, imposed liability upon Jorden's because Tucker had the longest period of exposure with Jorden's. After remand, the WCAB affirmed but imposed liability upon Al's Radiator, as the last employer where Tucker was exposed to lead under the "last injurious exposure rule."[2]

2. Under the last injurious exposure rule, when an employee becomes disabled or dies from an occupational hazard attributable to successive exposures during employment, the employer liable will be the last employer responsible for exposure to the hazard. *Adams Steel Erection, Inc. v. Workmen's Compensation Appeal Board (Klavonick)*, 117 Pa.Commonwealth Ct. 290, 543 A.2d 241 (1988).

On appeal,[3] Al's Radiator argues that Tucker did not have an occupational disease which requires the application of the last injurious exposure rule. Al's Radiator contends that Dr. Hodgson's diagnosis of "body burden of lead" is not "poisoning by lead," a compensable occupational disease under Section 108(a) of the Act. We do not agree.

Under the Act, there are two types of injuries. The first and most obvious is the physical injury, arising in the course of employment made compensable under Section 301(c)(1) of the Act, 77 P.S. § 411(1). The other type of injury is the "occupational disease" which, by virtue of Section 301(c)(2) of the Act, 77 P.S. § 411(2), also constitutes a compensable injury. Occupational diseases are often insidious, accumulating over many years, making it difficult to discern which of many possible employer's might be liable for the disease. To solve this problem, under Section 301(c)(2) of the Act, the employer liable for certain occupational diseases is the one "in whose employment the employee was last exposed for a period of not less than one year . . . ." However, this one year rule is not applicable to all occupational diseases but rather applies to those occupational diseases defined in Section 108(k) through (m) and (o) through (q), i.e., diseases of silicosis, asbestosis, tuberculosis, diseases of the heart and lungs to firefighters, byssinosis and coal worker's pneumoconiosis.

The statute does not instruct how liability is to be imposed on employers for employee's occupational diseases set forth in Sections 108(a) through (j). Therefore, the "last injurious exposed rule" has evolved, imposing liability upon the employer where the employee was last exposed. Thus, the employer responsible for an occupational disease described in Sections 108(a) through (j) of the Act is the employer to have last exposed the claimant to the hazards of the disease regardless of the duration of exposure. *Songer, Inc. v. Work-*

3. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. 2 Pa.C.S. § 704.

*men's Compensation Appeal Board,* 149 Pa.Commonwealth Ct. 578, 613 A.2d 658 (1992).

Al's Radiator concedes that if Tucker had "lead poisoning" that it would be responsible under the last injurious exposure rule. However, Al's Radiator argues that Tucker's diagnosis of heavy burden of lead did not qualify as an occupational disease under Section 108(a) of the Act and that in fact he had sustained a physical injury under Section 301(c)(1) of the Act which would make Jorden's liable. We do not agree.

 It is not necessary for a disease to come literally within the definition of the exact disease named in the statute. In *Whitehead v. Holston Defense Corp.,* 205 Tenn. 326, 326 S.W.2d 482 (1959), the Tennessee Supreme Court aptly stated that:

> some diseases are so closely related to certain classified diseases that they must be denominated as 'occupational,' provided the elements of causation can be connected, either directly or indirectly, with the conditions under which the employee is required to work.

*Id.* at 333, 326 S.W.2d at 485. The conventional notion of typical lead-poisoning has been construed in its broadest dictionary meaning because of the serious derangement of health caused by the exposure to lead. Larson, *Workmen's Compensation (Desk Ed.)* § 41.40. The crucial issue is that the disease is produced or aggravated by the distinctive conditions of the employment. Not only did Tucker's expert, Dr. Hodgson, testify but Dr. Wald and Dr. Winek affirmed that "body burden of lead" is a hazard of the type of work done by Tucker. If the inherent conditions of employment produce outright infection, we will treat the disability as an occupational disease. Therefore, we hold that the WCAB properly concluded that Tucker suffered an occupational disease under Section 108(a) of the Act.

 Next, Al's Radiator asserts that it cannot be held liable as a matter of law for an injury occurring while Tucker was employed by Jorden's. Al's Radiator supports this argument citing the referee's Conclusion of Law No. 2, which specifically

states that the injury occurred when Jorden's employed Tucker. Al's Radiator asserts that there is no logical or legal reason to transfer liability from the offending employer to an innocent one. However, the referee also found relying on Dr. Hodgson's testimony, that Tucker's exposure was cumulative. Finding of Fact 7. Even though the referee found Tucker sustained the injury originally when employed with Jorden's, the law requires liability to be imposed upon the last employer where Tucker was exposed to lead. Therefore, we hold that the WCAB did not err in holding that Tucker sustained an occupational disease under Section 108(a) of the Act and, therefore, applying the last injurious exposure rule.

Accordingly, we affirm.

## *ORDER*

AND NOW, this 2nd day of August, 1993, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.