ANNIE LEE BROOKS, Plaintiff in Error,

*v.*

GILMAN PAINT COMPANY, Defendant in Error.

(*Knoxville,* September Term, (May Session) 1960.)

Opinion filed May 26, 1961.

CUNNINGHAM, CRUTCHFIELD & SUMMITT, Chattanooga, for plaintiff in error.

CHAMBLISS, CHAMBLISS & HODGE, Chattanooga, for defendant in error.

Mr. Justice Swepston delivered the opinion of the Court.

This is a workmen's compensation suit and the applicable section is T.C.A. sec. 50-1101. Al Davis Brooks died in December, 1959, about one month after he began to have trouble from coughing and wheezing on account of exposure to dust but his death was not due to the exposure to dust but was due to cancer which was aggravated by the exposure to dust. The trial judge dismissed the petition and the widow has appealed and assigned error.

The theory of the petitioner's right to recover is stated in the brief in substance to this effect. It is not a suit to recover compensation for an occupational disease which caused the death of the decedent, but rather for an occupational disease which aggravated, accelerated or exacerbated a preexisting cancer which in turn caused the death of the decedent; also that the said disease is not one specifically listed in the statute as an occupational disease but petitioner relies upon the statement in *Tennessee Tufting Co. et al. v. Potter*, 206 Tenn. 620, 336 S.W.2d 539, in which the Court said that to be compensable the

disease must be occupational or one which is so closely related as to be classified with it, and is an incident to the condition under which the work is performed and is directly and proximately caused by the hazard of such employment.

The evidence shows that deceased had worked at this plant for 11 years and the evidence is very meager as to whether he worked under conditions of dust of mild or medium or extreme degree. The doctor who treated him testified that there was dust in his lungs but he could not say whether it was coal dust or what sort of dust it might be. The only medical proof is by Dr. Whitaker, who treated him, and he stated that this inhalation of whatever sort of dust it was caused an inflammatory reaction or condition in the lung called pneumonitis but he testified "the dust had not had time to cause a silicotic type of reaction, that is fibrosis. A fibrosis takes a good period of time, and when you speak of pathologically a microscopic picture of silicosis or pneumoconiosis, you're speaking of a fibrotic proliferation, that is, that is a scar that is laid down, and as you know when you cut your hand it is sometime before a hard scar is developed, and the same way the thing that the pathologists commonly call silicosis or commonly call pneumoconiosis is a scarring that requires a good lengthy period of time to develop." Then he stated that that period of time would be not less than six months on up to a year. Then with reference to the report of the post-mortem examination, it failed to show any fibrosis or pneumoconiosis process or any emphysema.

He further testified that this pneumonitis is ordinarily a temporary ailment provided the person is removed from

the exposure to dust and treated, because in a person in reasonably good health and particularly one not affected with cancer, the irritation will heal and complete recovery be had. However, in the case of one with dormant cancer of this type which was defined as "metastatic anaplastic adenocarcinoma to lymph nodes, lungs, liver, and adrenal, extensive" (which means a type shifting from one part of the body to another and progressive which might develop slowly but through irritation at some point of the body might suddenly begin developing rapidly in one particular area or organ of the body), the lymph glands in the lungs will be irritated and will accelerate or reactivate cancer in that part of the body. That is what caused the decedent's death in this case. The evidence further is that in this type of cancer the man would have died sooner or later anyway.

We have held in *Whitehead v. Holston Defense Corp.*, 205 Tenn. 326, 326 S.W.2d 482, that pulmonary fibrosis is so closely related to one of the listed occupational diseases as to be compensable. Also in *American Bridge Division, etc. v. McClung,* 206 Tenn. 317, 333 S.W.2d 557, as to pulmonary fibrosis, pulmonary emphysema, etc. We are unable, however, to bring ourselves around to the view that a temporary inflammation of the lungs such as this pneumonitis here is anything more than a condition which if continued long enough might ultimately result in one of those listed occupational diseases or one so closely related to a listed one as to make the temporary condition an occupational disease. The fact is that the temporary condition brought about a reactivation of cancer and caused the man's death long before the temporary condition could crystallize into what the doctors call a scarring condition of silicosis or of pneumoconiosis.

We acordingly feel that we must sustain the action of the court below.

■ A great deal of discussion in the briefs and in the trial court was taken up with the second question of whether or not, if you assume the disease to be occupational, is it compensable if it aggravates or accelerates, etc., a pre-existing condition, weakness or disease. The opinion of the writer in the case of *American Bridge Division, etc. v. McClung* seemed to give the court and lawyers some difficulty. That case was correctly decided because there was testimony to the effect that the inhalation of the dusts could have contributed toward the cause of one or several of the diseases therein listed. However, the writer, in further study of what was said in regard to assignment 5 in that case which is syllabus (3) on page 561, is of the view that the ruling made there is erroneous and should not be followed hereafter. Although our ruling on the first question disposes of the case, it is not dicta for us to make the ensuing statement in regard to the second question in order that trial courts may not hereafter be misled by the statement in the above-mentioned case.

Our research has disclosed very few cases dealing with the subject. The question is dealt with more specifically in 99 C.J.S. Workmen's Compensation sec. 169, subsection c, p. 574, than anywhere that we have been able to find. The general rule is stated to be that, except insofar as the statute may specially provide otherwise, death or disability resulting from a compensable disease and another, non-compensable, condition or disease is compensable on the ground that the occupational disease is a contributory, aggravating, or accelerating cause. And

when a disease arising out of and in the course of employment is superimposed on and affects a prior non-occupational condition, the end result is compensable.

The statutes in the several states vary so widely that it is only in those where the provision of the statute under occupational diseases is similar to or the same in substance as ours especially with reference to subpara. (6) providing ''it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction.''

With reference to accidental injuries arising out of and in the course of employment, it has long been the rule in this State that the employer employing a workman takes him as he is and assumes the risk of having a weakened condition aggravated by some injury which might not hurt or bother a perfectly normal healthy person and, if injury is the proximate cause of disability and excites and aggravates a previous weakened condition, the employer is liable. *Swift & Co. v. Howard,* 186 Tenn. 584, 212 S.W.2d 388. Numerous cases have been decided in this State to the same effect and need not be cited. This is the universal rule as shown by Larson on Workmen's Compensation Law, Sec. 12:20. After further study, we can see no reason why the same principle should not apply by analogy to aggravation, acceleration or exacerbation of a pre-existing condition or disease brought about by an occupational disease. In a late Pennsylvania case dealing with their statute, *Rohner v. Fox Products,* 164 Pa.Super. 610, 67 A.2d 605, the facts are that the deceased died of pulmonary tuberculosis aggravated and accelerated by lead poisoning. Both the

question of aggravation and acceleration and the question of a contributing cause were dealt with. *Held,* recovery allowed. It was urged that, since the act contained no provision as to contributing or aggravating cause, there was no coverage. On page 608 of 67 A.2d, the Court, in quoting the material part of the statute, said:

"\* \* \* caused by occupational disease arising out of and in the course of his employment \* \* \*".

The Court further stated:

"In these sections there is no requirement that death be *solely* caused by the occupational disease, or that the occupational disease itself must be the active agency which terminates life. Likewise, these sections do not exclude death as compensable where the occupational disease is the contributory or accelerating cause. The important thing is that there shall be a causal relationship, of whatever character between the disease and the death."

This case cites previous Pennsylvania cases where the rule is not stated so clearly as in the present case.

In the case of *Giambattista v. Thomas A. Edison, Inc.,* 1954, 32 N.J.Super. 103, 107 A.2d 801, 805, the employee's basic condition was fungoid in nature and hence non-occupational but same was aggravated by benzine, in which his hands were repeatedly immersed in his occupation thereby causing a skin trouble. *Held,* where under such circumstances, i. e., a disease arising out of and in the course of employment, is superimposed upon and affects a prior non-occupational condition, the end result is compensable.

The New Jersey act defining occupational disease states:

"* * * It shall include all diseases arising out of and in the course of employment, which are due to causes and conditions which are or were characteristic of or peculiar to a particular trade, occupation, process or employment, or which diseases are due to the exposure of any employee to a cause thereof arising out of and in the course of his employment." N.J.S.A. 34:15-31.

The Court went into the history of the development of the compensation law in New Jersey and then on page 806 of 107 A.2d drew the analogy between the rule as to accidental injuries aggravating a pre-existing trouble and the same situation in regard to the effect of occupational diseases. *Smith v. State,* 1952, 138 Conn. 620, 88 A.2d 117. The employee in a state institution had a dormant case of tuberculosis reactivated by exposure to tuberculosis germs by reason of his employment, etc. The Act provided for coverage if the employee became infected by any malignant infectious or contagious disease while in such employment and during the performance of his duties. The opinion quoted Judge Learned Hand in a Longshoreman's Act Compensation case where he said:

"I can see no difference between a fresh infection and * * * an old one. * * *"

See also the same Judge Hand's opinion in another Longshoreman Act case, *Grain Handling Co., Inc. et al. v. Sweeney, et al.,* 2 Cir., 1939, 102 F.2d 464, wherein a dormant tuberculosis case was revived by fibrosis resulting from inhalation of grain dust in loading ships.

 In the case at bar it was insisted in behalf of the employer that the deceased employee did not die of the

occupational disease by died of the cancer. Under the above authorities, we think that insistence is not determinative. Therefore, we feel we should give the same liberal construction to the section of the Workmen's Compensation Act relating to occupational disease as we have given to the accidental injury aspect and as we are by the Act directed to do in the enforcement generally of the Act.

However, the judgment below must be affirmed. Divide the costs of appeal.

All concur.