**Pauline WARE, Appellant,**

v.

**UNITED STATES STEEL CORPORATION, Appellee.**

Supreme Court of Tennessee.

July 19, 1976.

O. D. Bridges, Catlett, Ramsey & Bridges, Jefferson City, for appellant.

Arthur G. Seymour, Jr., Frantz, McConnell & Seymour, Knoxville, for appellee.

## OPINION

HENRY, Justice.

This is an appeal from a denial of Workmen's Compensation benefits in a suit wherein the claim was predicated upon silicosis and recovery was sought under the occupational disease statutes, § 50–1101, et seq., T.C.A.

## I

Claimant was employed by United States Steel Corporation for approximately thirty years. Sometime around 1964 he developed hypertensive cardiovascular disease. In February 1969 he suffered a myocardial infarction, but recovered sufficiently well to resume his employment. In March 1971 he suffered a second myocardial infarction.

After this second heart attack his doctor advised him not to return to work. The doctor testified by deposition and stated that as a result of this heart condition "Mr. Ware was 100 percent disabled." He did not return to work. He drew his company pension and social security benefits based on total disability.[1]

On May 30, 1972 he consulted Dr. William K. Swann, a thoracic surgeon, who determined that he was suffering from silicosis and was permanently and totally disabled by reason thereof. It was Dr. Swann's opinion that silicosis would aggravate his heart condition.

This action was instituted on October 2, 1972. Thereafter, he was examined on November 30, 1972 by another thoracic surgeon, Dr. William K. Rogers, who was designated by counsel for U. S. Steel. Dr. Rogers concluded that he was suffering from "pneumoconiosis in category one", characterized as being the lowest on the severity scale, with "minimal to moderate loss of pulmonary function." He further testified that pneumoconiosis can be a progressive disease. He testified positively, however, that it did not aggravate, or have any significant effect on coronary artery disease.

The Trial Judge found that claimant had silicosis arising out of his employment, and that this was permanently and totally disabling; however, he further found and held:

. . . that this plaintiff was totally disabled before the diagnosis of silicosis . . . by reason of the heart condition, and since he was totally disabled by reason of the heart condition *this Court*

cannot award any compensation by way of reduced earning capacity for silicosis. (Emphasis supplied).

There is ample material evidence to support findings that (1) claimant was permanently and totally disabled after his heart attack of 1971; (2) that he was suffering from silicosis, a progressive lung disease, and (3) that he was permanently and totally disabled by reason thereof.

## II

The action of the Trial Judge in predicating his denial of compensation upon the basis of there being no reduction in earning capacity was unfortunate and resulted in the parties joining issue, in this Court, on a question that is not properly involved in this controversy.

█ It should be borne in mind that the all pervading purpose of the workmen's compensation laws is to substitute compensatory income for loss of earning capacity. *Hartford Hosiery Mills v. Jernigan,* 149 Tenn. 241, 259 S.W. 546 (1923). But it must be borne in mind that the terms "loss of earning capacity" and "loss of earnings" are not synonymous. See 2 Larson, Workmen's Compensation Law, § 57.21 (1976).

At the very outset of this discussion, we point out that there is a substantial difference in the Workmen's Compensation Law as it exists today and as it existed prior to 1953.

The "permanent partial disability" cases prior to the adoption of Chapter 111, Public Acts of 1953, construe subsection (c) of § 50-1007 which, prior to 1953, read:

In all other cases of permanent partial disability not above enumerated the compensation shall be sixty per centum of the *difference between the wage of the workman at the time of the injury and the wage he is able to earn in his partially disabled condition* subject to a maximum of twenty-five dollars per week. (Emphasis supplied).

1. At the time of the trial, claimant was 57 years of age. He has since died and this suit has

been duly revived in the name of his widow (administratrix).

It is evident that under the section as it then existed a decrease in earning capacity was significant.

In *Standard Sur. & Cas. Co. v. Sloan,* 180 Tenn. 220, 173 S.W.2d 436 (1943), the Court makes this decrease in capacity to earn wages the primary test of entitlement to compensation. After quoting from the act as it then existed, the Court said:

> The measure of the award is prescribed by the language we have italicized. If there is no 'difference,' then there can be no award of compensation. 180 Tenn. at 225, 173 S.W.2d at 438.

Obviously, the Court in that case construed the phrase "is able to earn" as being synonymous with "is earning" although later in the opinion does make the statement "[t]he test is whether or not there has been a decrease in petitioner's capacity to earn wages." 180 Tenn. at 226, 173 S.W.2d at 438.

In the case of *Mathis v. Forrest & Sons,* 188 Tenn. 128, 216 S.W.2d 967 (1949), the Court quoted extensively from *Standard Sur. & Cas. Co.* and dismissed the petition for permanent partial benefits because the injuries complained of "had not diminished petitioner's earning capacity". The factual situation was that the claimant had had no reduction in his wages as a result of the injuries he had sustained. Again the Court very obviously applied a test of actual loss of earnings as opposed to earning capacity.

Mr. Justice Gailor, in *Greeneville Cabinet Co. v. Ramsey,* 195 Tenn. 409, 260 S.W.2d 157 (1953), substantially clarifies and moderates these and other prior holdings by a clear statement that the phrase "is able to earn" is not synonymous with "is earning", and points out that:

> The question is whether, in the open labor market, in his disabled condition, the employee, after the injury, is able to earn in spite of his disability, as much as he was able to earn before the injury. 195 Tenn. at 414, 260 S.W.2d at 159.

■ By Chapter 111, Public Acts of 1953, the Legislature struck the last paragraph of Section 6878(c), 1950 Code Supplement, [now Sec. 50–1007(c)] and inserted a new provision designed to furnish a basis for determining the compensation to be paid for permanent partial loss of the body as a whole by giving it "a specific value in weeks in the same manner that a value in weeks is given in the schedule to the various members of the body." *Hooper v. Young Sales Corp.,* 199 Tenn. 629, 635, 288 S.W.2d 703, 705 (1956).

The effect of this amendment was to place "permanent partial loss of the use of the body in the schedule wherein specific amounts are fixed for the whole or partial loss of a given member of the body." *Bituminous Cas. Corp. v. Smith,* 200 Tenn. 13, 19, 288 S.W.2d 913, 915 (1956). See also *U.S.F. & G. v. Townsend,* 206 Tenn. 592, 335 S.W.2d 830 (1960).

In *McKenzie v. Campbell & Dann,* 209 Tenn. 475, 354 S.W.2d 440 (1962), the Court, speaking through the late Justice White, in a case involving permanent partial disability held the test to be "what he is able to earn in his disabled condition on the open labor market." 209 Tenn. at 482, 354 S.W.2d at 443.

In *American Surety v. Kizer,* 212 Tenn. 328, 369 S.W.2d 736 (1963), this Court, speaking through Justice Holmes, quoted with approval the language from *Bituminous Cas. Corp., supra,* with respect to § 50–1007(c) as follows:

> [The amendment] had the effect of placing permanent partial loss of the use of the body in the schedule wherein specific amounts are fixed for the whole or partial loss of a given member of the body, or of its use, and without regard to the effect of such loss upon the subsequent earning power of the injured employee. 212 Tenn. at 336, 369 S.W.2d at 740.

■ Under § 50–1007(c), relating to permanent partial disability, the fact that there is no decrease in earning capacity is not of controlling significance. Given the statutory obligation of the courts to treat the Workmen's Compensation Law as a remedial statute to be given an equitable construction, we think the true rule is that the fact of employment after an injury, the

earning power of the injured workman, and his earnings are to be taken into consideration along with all other factors involved, to include whether the employee, in the light of his education, his physical and mental abilities, or the lack thereof, is employable in the open labor market.

### III

It is important that we bear in mind that the Tennessee Workmen's Compensation Laws classify compensable injuries into four separate and distinct classes, viz., (a) temporary total disability, (b) temporary partial disability, (c) permanent partial disability, and (d) permanent total disability, as pointed out in *McKenzie v. Campbell & Dann, supra,* and that:

> [e]ach of these four kinds of disability is separate and distinct and is separately compensated for by different methods provided by the several sub-sections of § 50–1007; and each of such provisions is independent and unrelated. 209 Tenn. at 486, 354 S.W.2d at 445.

Actually this case does not arise under subsection (c) of § 50–1007, T.C.A., but rather it arises under subsection (d) which relates to permanent total disability. This necessarily follows from the fact that there is no dispute in this record but that the claim is for permanent total disability and claimant is entitled to be compensated on that basis, or not at all.

Under § 50–1007(d) the benefits are fixed at "sixty-six and two-thirds per cent (66⅔%) of the wages received at the time of the injury, subject to a maximum compensation of eighty-five dollars ($85.00) per week and a minimum of fifteen dollars ($15.00) per week . . ." Again the whole theory of the Workmen's Compensation statute is that compensatory income is substituted for loss of earning capacity. The theory of permanent total disability benefits is that there is an irrevocable loss and a complete destruction of that capacity. It therefore follows that earning capacity is of no significance in an award of permanent total disability benefits.

As pointed out earlier in this opinion, this claim is based upon § 50–1101 et seq., T.C.A., relating to occupational diseases. It is provided in § 50–1105 that:

> When the employer and employee are subject to the provisions of the Workmen's Compensation Law, the partial or total incapacity for work or the death of an employee resulting from an occupational disease as herein listed and defined shall be treated as the happening of an injury by accident or death by accident, and the employee, or in case of his death his dependents, shall be entitled to compensation as provided in such law.

Silicosis is a listed disease under § 50–1101, T.C.A.

### IV

We have already concurred in the Chancellor's findings (1) that claimant was permanently and totally disabled as a result of a heart attack in 1971, (2) that he was suffering from silicosis and (3) that this was a permanently and totally disabling condition. It should be pointed out that no claim is made that claimant's heart condition was occupational in origin.

Our basic difficulty in deciding this controversy stems from the fact that the Chancellor applied an incorrect standard in denying benefits on the basis of a reduction in earning capacity. This is compounded by his failure to make any finding with respect to whether the disease of silicosis aggravated or accelerated his heart condition. The proof in this record is sketchy, inconsistent and unsatisfactory in that regard.

In this connection, we quote with approval from another case arising under the occupational disease statute, *Brooks v. Gilman Paint Co.,* 208 Tenn. 595, 347 S.W.2d 665 (1961):

> The general rule is stated to be that, except insofar as the statute may specifically provide otherwise, death or disability resulting from a compensable disease and another, non-compensable, condition or disease is compensable on the ground that the occupational disease is a contrib-

utory, aggravating, or accelerating cause. And when a disease arising out of and in the course of employment is superimposed on and affects a prior non-occupational condition, the end result is compensable. 208 Tenn. at 599–600, 347 S.W.2d at 667.

The Chancellor found in the instant case, and we concur, that silicosis had its origin in claimant's employment with U. S. Steel. In this regard we point out that the proof establishes and, this Court has recognized, that silicosis is a progressive disease. *Wilson v. Van Buren County,* 196 Tenn. 487, 268 S.W.2d 363 (1954).

Again, quoting from *Brooks:*

With reference to accidental injuries arising out of and in the course of employment, it has long been the rule in this State that the employer employing a workman takes him as he is and assumes the risk of having a weakened condition aggravated by some injury which might not hurt or bother a perfectly normal healthy person and, if injury is the proximate cause of disability and excites and aggravates a previous weakened condition, the employer is liable  .  .  . After further study, we can see no reason why the same principle should not apply by analogy to aggravation, acceleration or exacerbation of a pre-existing condition or disease brought about by an occupational disease. 208 Tenn. at 600, 347 S.W.2d at 667.

See also 1 Larson, Workmen's Compensation Law, Sec. 12.20 (1972).

Applying this latter principle to this case, the record shows that as a minimum, U. S. Steel had knowledge of claimant's heart condition as early as 1969 and it is fair to assume, earlier. If, in point of fact, silicosis did aggravate his serious and continuing coronary heart disease, the principles announced in *Brooks, supra,* would be applicable. Again, the Trial Judge made no specific finding with respect to aggravation or acceleration of the heart disease and the record in this regard is not entirely satisfactory.

We, therefore, remand this case for consideration under *Brooks v. Gilman, supra,* and *Davis v. Yale & Towne,* 221 Tenn. 18, 423 S.W.2d 862 (1967), for the specific purpose of determining whether the occupational disease of silicosis which arose out of and in the course of claimant's employment, when superimposed upon the coronary heart condition, operated to aggravate, accelerate or exacerbate that condition, resulting in compensable disability. The Trial Judge is privileged to make that finding based upon the existing record or may direct that the parties take such additional proof as he may deem necessary, or as either counsel may deem desirable. Our jurisdiction in workmen's compensation cases is appellate only and it would be an infringement upon the duties and prerogatives of the Trial Court for us to sit in judgment on this case without a finding by the Trial Court on this critical issue.

Remanded.

COOPER, C. J., and FONES, BROCK and HARBISON, JJ., concur.