**STRATTON–WARREN HARDWARE
and Continental Insurance
Company, Appellants,**

v.

**Harold W. PARKER, Appellee.**

Supreme Court of Tennessee.

Nov. 7, 1977.

James F. Eggleston, John R. Johnson, III, Buchignani & Greener, Memphis, for appellants.

Ben Todd, Memphis, for appellee.

## OPINION

HENRY, Justice.

This is a workmen's compensation action. The defendants, Stratton-Warren Hardware Company and Continental Insurance Company, appeal from a decision of the Shelby County Circuit Court awarding benefits for 100% total and permanent disability to the plaintiff, Harold W. Parker, an employee of Stratton-Warren. Mr. Parker suffers from emphysema, pulmonary fibrosis and bilateral bronchiectasis, all allegedly caused by the environment in which he worked.

Three issues are presented upon this appeal: (1) whether there is any material evidence that plaintiff gave timely notice to his employer as required by Section 50–1107, T.C.A.; (2) whether the conditions from which plaintiff suffered are compensable occupational diseases under the facts of this case; and (3) whether there is any material evidence that the conditions of plaintiff's job caused his illness.

### I.

Plaintiff began to work for defendant Stratton-Warren in 1951. He had been suffering from asthma since early childhood. Despite asthmatic attacks once or twice a month, however, plaintiff enjoyed general good health at the time of his employment and was not disabled by his disease. Plaintiff had smoked cigarettes since his late teens.

From 1951 to 1975, plaintiff worked on the third floor of Stratton-Warren's warehouse, an old brick building without air conditioning or heat on the plaintiff's floor, except for a small heater beneath his desk. As a result, plaintiff was subjected to extremes of temperature in the winters and summers.

The air on the third floor was contaminated with a black dust that visibly covered the building's beams, ledges and shelves. This dust would be picked up and circulated by exhaust fans in the ceiling and by vacu-ums and brooms used to clean the building. The origin of this dust was unclear although plaintiff's evidence attempted to connect it with railroad engines on two tracks running near the building. The air was also contaminated by gas and exhaust fumes, which drifted up from lower floors of the warehouse where forklifts were operated.

Over the years, plaintiff's respiratory condition gradually worsened until, in 1972, he went to Dr. B. E. McLarty to be treated for "shortness of breath." Dr. McLarty eventually diagnosed plaintiff's condition as emphysema, pulmonary fibrosis, bilateral bronchiectasis and "life-long asthma," all of which, except for the asthma, had developed sometime in the past five to ten years.

During the time that Dr. McLarty treated plaintiff, no mention was made of plaintiff's work conditions until March 19, 1975, when Dr. McLarty asked plaintiff about his work environment. As a result of this conversation, Dr. McLarty and plaintiff became aware of a connection between plaintiff's respiratory problems and his working conditions, and the doctor advised plaintiff to leave his job.

Dr. McLarty then wrote a letter, addressed "To Whom It May Concern," in which, after summarizing plaintiff's treatment, he noted:

> Mr. Parker has been employed as a warehouse supervisor and has found it increasingly difficult to do his work because of increasing age, worsening of his respiratory symptoms, and a heavier work load due to a decrease in personnel at his place of employment.

> . . . . .

> Diagnoses: 1. pulmonary fibrosis and emphysema; 2. bilateral bronchiectasis; 3. life-long bronchial asthma. . . .

> Prognosis: it is a certainty that with pulmonary fibrosis and emphysema, bronchiectasis and bronchial asthma, Mr. Parker is much more likely to get worse than better. It is my feeling that his prognosis will be much better if he can get away from the dust and exertion involved in his warehouse job.

The next day, plaintiff gave this letter to his employer and asked for "all benefits receivable under disability." Although his employer told him that he was not "eligible for anything," plaintiff still requested and completed forms for disability insurance and retirement benefits. On these forms plaintiff checked the box indicating that he did not expect to receive workmen's compensation, although he placed a question mark at the head of the column in which this check was written, opposite the blank for Federal Social Security Benefits.

When plaintiff received no disability or retirement benefits, his attorney contacted his employer concerning these benefits and vacation pay. It was not until October 16, 1975, that Stratton-Warren received a letter expressly stating that plaintiff was seeking workmen's compensation.

## II.

Defendants complain that there is no material evidence to support the trial judge's finding that "the plaintiff gave timely notice within the intent of the Tennessee Workmen's Compensation Act and that plaintiff reasonably complied with such provisions of the Act." They argue that there is nothing in the letter written by Dr. McLarty or the statements made by plaintiff to his employer that would have indicated that plaintiff was claiming that his respiratory ailments arose from conditions at Stratton-Warren.

■ In workmen's compensation cases, this Court, no matter what its opinion may be regarding the weight of the evidence, must affirm the findings of the trial court when they are supported by any material evidence. *Kingsport Press, Inc. v. Van Huss*, 547 S.W.2d 572 (Tenn.1974). Also, those sections of the Workmen's Compensation Act relating to occupational diseases are to be given a liberal construction. *Brooks v. Gilman Paint Co.*, 208 Tenn. 595, 347 S.W.2d 665 (1961).

■ With these considerations in mind, this Court must uphold the trial judge's finding that the plaintiff reasonably complied with the notice provisions of the Act. Upon being informed by his physician of a connection between his respiratory problems and his working conditions, plaintiff timely presented Dr. McLarty's letter to his employer. In this letter Dr. McLarty indicated that there was a relation between plaintiff's condition and his working environment, that dust, exertion and increasing work load had contributed to plaintiff's disability.

Plaintiff gave his employer notice of every fact that he himself had in his possession at that time regarding the connection between his pulmonary condition and his work environment. Dr. McLarty's letter reasonably suggested that plaintiff's disease arose out of plaintiff's employment at Stratton-Warren and that compensation liability was possible. *See Powers v. Beasley*, 197 Tenn. 549, 276 S.W.2d 720 (1955); A. Larson, *Workmen's Compensation* § 78.-31(a) (1976).

Defendants' first assignment of error is overruled.

## III.

■ The other assignments of error raised by defendants complain of the trial court's findings that plaintiff was suffering from a compensable occupational disease. Defendants assert that there is no material evidence to support the finding that plaintiff's disease originated in his work environment.[1]

As was stated in *Brooks v. Gilman Paint Co.*, 208 Tenn. 595, 600, 347 S.W.2d 665, 667 (1961):

[I]t has long been the rule in this State that the employer employing a workman takes him as he is and assumes the risk of having a weakened condition aggravated by some injury which might not hurt or bother a perfectly normal healthy person

---

1. Defendant employer in this case had elected to be covered under the alternate plan provided in Section 50–1103, T.C.A.

and, if injury is the proximate cause of disability and excites and aggravates a previous weakened condition, the employer is liable. . . . [W]e can see no reason why the same principle should not apply by analogy to aggravation, acceleration or exacerbation of a pre-existing condition or disease brought about by an occupational disease.

Despite testimony that asthmatics may eventually show some signs of the conditions disabling plaintiff and that other factors, including smoking, could also contribute to the development of emphysema and fibrosis, there was ample testimony by Dr. McLarty that the dust and other work factors were causally related to plaintiff's condition. Dr. McLarty indicated that trauma associated with plaintiff's work excited and aggravated plaintiff's asthma, a pre-existing condition, with the result that plaintiff was prematurely, if he would ever have been, crippled by emphysema and fibrosis.

Defendant argues that, in the absence of any sensitivity tests to determine what type of dust irritated plaintiff, any medical opinion that the work environment caused plaintiff's condition is "mere speculation and without foundation."

Absolute certainty on the part of a medical expert is not necessary to support a workmen's compensation award, for expert opinion must always be more or less uncertain and speculative. *American Insurance Co. v. Ison*, 538 S.W.2d 382 (Tenn.1976); *Great American Indemnity Co. v. Friddell*, 198 Tenn. 360, 280 S.W.2d 908 (1955). Although no tests had been made, Dr. McLarty was still able to state that he believed that the diseases in question were caused by the "particular hazards" of plaintiff's employment.

For the above reasons, we hold that there was material evidence to support the trial judge's findings that plaintiff suffered from a compensable occupational disease.

Affirmed.

COOPER, C. J., and FONES, BROCK and HARBISON, JJ., concur.