Walter N. JACKSON, Plaintiff-Appellee,

v.

**GREYHOUND LINES, INC.,**
**Defendant-Appellant.**

Supreme Court of Tennessee,
at Knoxville.

July 20, 1987.

Gareth S. Aden, Dodson, Harris, Robinson & Aden, Nashville, for defendant-appellant.

Mark J. Fishburn, Bednarz & Fishburn, Nashville, for plaintiff-appellee.

## OPINION

DROWOTA, Justice.

This Workers' Compensation appeal fundamentally presents two issues: (1) whether the award of certain past and future medical expenses was appropriate and (2) whether the extent of disability was properly determined. Plaintiff, Walter N. Jackson, was awarded additional medical attendance for injuries sustained on the job and was determined to retain a permanent partial disability of 35 percent to the body as a whole. Defendant, Greyhound Lines, Inc., a self-insured employer, has appealed. Defendant does not dispute that Plaintiff suffered a compensable injury and has voluntarily paid temporary total disability benefits, certain past medical expenses, and benefits representing compensation for a 20 percent permanent partial disability to the body as a whole. Plaintiff has made a motion for a finding that this is a frivolous appeal.

On January 15, 1982, Plaintiff, a mechanic for Greyhound Lines, was working to start a bus when the engine started and engaged in reverse gear; the bus rolled back, pinning Plaintiff between the bus and the service truck and pushing Plaintiff for some distance. Plaintiff's pelvis was crushed; he lost consciousness and was taken immediately to Nashville General Hospital, where he was diagnosed as sustaining a bilateral pelvic fracture. Initial treatment consisted of traction and immobilization for approximately two weeks. Conservative treatment continued in the hospital and Mr. Jackson was subsequently mobilized by the use of a walker and then by crutches. When he was discharged from the hospital on February 26, 1982, he was still dependent on crutches. In March, 1982, he was readmitted for a short period for treatment of abnormal potassium levels in his blood.

Following his discharge from the hospital, a number of consequent complications arose due to the nature of his injury and of the treatment. The primary problem was loss of sexual function. Plaintiff found that after the accident he was no longer able to maintain an erection, which problem he had not experienced previously. When this condition did not improve, he sought medical treatment from Dr. Paul A. Johnson, who referred him to Dr. David H. Morgan for diagnosis and treatment. In addition, Plaintiff continued to manifest symptoms of renal insufficiency, which had appeared in the hospital and had caused elevated levels of potassium in his blood. While in the hospital, Plaintiff's left shoulder also began to bother him, and although he did not complain about it initially because he thought it would disappear, he eventually informed Dr. Ronald Rosenthal of his symptoms on March 29, 1982, during an out-patient follow-up examination at General Hospital. Dr. Rosenthal diagnosed the condition as a degenerative tear in the left rotator cuff of the shoulder. Although released from treatment in August, 1982, Plaintiff's condition did not improve and he continued to seek medical care for his problems. Defendant, however, refused to pay for the necessary diag-nostic tests for and treatment of his impotence and also denied that the problem with his left shoulder was causally related to the accident. Plaintiff then resorted to filing this action on February 7, 1984, to recover unpaid compensation benefits. Trial was held on June 5, 1986.

At trial, Plaintiff testified that he was 52 years old at the time of the accident and that he had started working for Greyhound in 1961 as a mechanic's aide; he worked as a general mechanic for defendant for 18 years prior to the accident. Because he had passed out, he could not recall whether his shoulder had been involved in the accident; nevertheless, he stated that prior to this accident he had no significant physical limitations. All of his present symptoms and problems appeared following the accident. While he has returned to work for Defendant, he is no longer able to work as he did prior to the injury. He tires easily, cannot lift as well, and cannot stand for long periods without experiencing back pain. Other limitations include muscle spasms in his back and legs, an inability to bend at times, and a diminished capacity to walk long distances. His job requires him to stand for extended periods and he now must request assistance to complete work tasks he previously performed alone. Plaintiff's wife confirmed that his abilities and stamina have been impaired as a result of the accident. He is not as able to help with household chores, seems irritable, and complains of problems with his back, legs, and left shoulder. She also stated that he tires readily and suffers from some memory loss. Moreover, Mrs. Jackson corroborated that Plaintiff's impotence developed only after the accident and did not predate his injury. Although Plaintiff does have two years of college education and some training in other skills than as a mechanic, he has not worked in any other position than as a mechanic or mechanic's aide for over twenty years. At the time of trial, he was 56 years old; he has four children, ages five to twenty-two years old.

The depositions of four doctors were accepted into evidence. To some extent, the evidence conflicted regarding whether

Plaintiff's subsequent problems with impotence and with his shoulder were caused by the accident. The material evidence supporting the trial court's determinations on these issues is summarized here. Dr. Johnson, a specialist in internal medicine, first saw Plaintiff on September 18, 1984. His physical examination of Plaintiff revealed that his renal functions had not returned to normal. Recovery of normal kidney function is sometimes problematic and considering the lapse of time since the injury, Plaintiff's condition had probably reached maximum improvement. Dr. Johnson noted that Plaintiff complained about his shoulder, legs, and back as well as his impotence. He referred Plaintiff to a urologist for diagnosis and treatment of his erectile problem. Dr. Johnson found some indication of a pre-existing renal condition and possibly some degree of hypertension but he believed that the renal problems were aggravated by the trauma of the accident and was unable to confirm the existence of any hypertension.

Dr. Lloyd A. Walwyn, an orthopedic surgeon, saw Plaintiff for evaluation on August 25, 1982; Plaintiff was referred to him by his attorney. Plaintiff's complaints centered on his back problems and his left shoulder. Dr. Walwyn examined Plaintiff and concluded that the crushed pelvis was his major injury, which in turn had caused renal failure, and that his shoulder condition developed when Plaintiff was immobilized for the first ten days to two weeks of hospitalization. X-rays showed that the pelvic bones were disrupted and the pubic joint, in the area of the genitals, was dislocated; he also found that the left shoulder displayed a degenerative change in the joint, leaving Plaintiff with a markedly decreased range of motion. A number of objective indications of injury were present. His opinion was that, even assuming Plaintiff had a pre-existing degenerative condition in his shoulder, immobilization after the accident had aggravated the condition. He rated Plaintiff's anatomical impairment at 20 percent permanent partial disability to the body as a whole due to the pelvic injury and, separately, an additional 8 percent permanent partial disability to the

body as a whole due to the left shoulder problem.

The urologist to whom Dr. Johnson had referred Plaintiff, Dr. Morgan, examined Plaintiff and sent him to West Side Hospital for two nights, October 24 and 25, 1984, to conduct sleep studies to determine whether his impotence had a psychological or physiological cause. These tests indicated conclusively that the Plaintiff's inability to maintain an erection was physiological, resulting in a diagnosis of significant erectile dysfunction. The available treatment for this condition consists of an implantation of a penile prosthesis. While Dr. Morgan testified that trauma does not ordinarily cause impotence, he expressed the opinion that the Plaintiff's injury possibly caused this problem and, although he was not absolutely certain, he believed that "any time you disrupt the pelvis ... that could easily and readily cause difficulty." He was convinced that the severe disruption of Plaintiff's pelvis and the involvement of the pubic joint caused Plaintiff's impotence.

The Defendant called Dr. Rosenthal, an orthopedic surgeon, who was a treating physician during Plaintiff's hospitalization in January and February of 1982. His testimony confirmed that Plaintiff had been immobilized for about ten days to two weeks after his injury. The Plaintiff's records showed that he first complained about his shoulder in late March, 1982. Dr. Rosenthal agreed with Dr. Walwyn that Plaintiff retained a 20 percent permanent partial disability to the body as a whole as a result of his pelvic fracture. He also stated that the use of a walker and of crutches places considerable strain on the shoulders but he disagreed with Dr. Walwyn that the Plaintiff's shoulder condition arose as a consequence of the accident or of the treatment of the injury.

This case is decided under the material evidence standard of review. *See Alley v. Consolidation Coal Co.,* 699 S.W.2d 147, 149 (Tenn.1985). The trial court found that Plaintiff's left shoulder condition was caused by aggravation of a pre-existing condition during hospitalization and treat-

ment of his crushed pelvis. The Chancellor also determined that Plaintiff's impotence was neither a pre-existing condition nor psychologically induced and was caused by the accident, requiring a penile implant to correct it. Plaintiff was awarded a 35 percent permanent partial vocational disability to the body as a whole. The Chancellor ordered that Defendant provide additional compensation benefits for permanent partial disability, that Defendant pay certain accrued medical expenses and provide the needed surgical procedure to correct Plaintiff's impotence, including an award of temporary total disability benefits during Plaintiff's surgery and recovery.

On appeal, Defendant contends that no material evidence supports the judgment of the trial court regarding causation of Plaintiff's impotence, arguing that the evidence merely indicates that the injury could be the cause of this condition, and thus the award of additional medical attendance and temporary total benefits is improper. The evidence demonstrates that Plaintiff had not experienced impotence before his accident, that the injury to his pelvis involved disruption of his pubic joint, that the problem is not psychological in nature, and that a urologist was convinced that the accident probably caused the condition. This Court recently restated the established rule concerning proof of causation:

> "Although absolute certainty is not required for proof of causation ... medical proof that the injury was caused in the course of the employee's work must not be speculative or so uncertain regarding the cause of the injury that attributing it to the plaintiff's employment would be an arbitrary determination or a mere possibility.... If, however, equivocal medical evidence combined with other evidence supports a finding of causation, such an inference may nevertheless be drawn by the trial court under the case law."

*Tindall v. Waring Park Association,* 725 S.W.2d 935, 937 (Tenn.1987) (citations omitted). *See also Owens Illinois, Inc. v. Lane,* 576 S.W.2d 348, 349 (Tenn.1978).

We have long recognized that in these cases "[a]bsolute certainty on the part of a medical expert is not necessary to support a workman's compensation award, for expert opinion must always be more or less uncertain and speculative." *Stratton-Warren Hardware v. Parker,* 557 S.W.2d 494, 497 (Tenn.1977) (citations omitted). The Chancellor's inference in this case regarding causation of the Plaintiff's impotence is clearly supported by material evidence and is not speculative or an arbitrary determination from the evidence. *See American Insurance Co. v. Ison,* 538 S.W.2d 382, 385 (Tenn.1976); *Hinson v. Wal-Mart Stores, Inc.,* 654 S.W.2d 675, 677 (Tenn.1983).

Defendant next asserts that the Plaintiff's shoulder condition is not shown to be causally related to the accident or to the treatment he received and thus should not form the basis of an award of additional compensation. Greyhound argues that the only medical evidence supporting the award is provided by Dr. Walwyn, an evaluating rather than treating physician, and thus is not properly relied upon without some other medical evidence of causation. Briefly stated, Dr. Walwyn was of the opinion that immobilization would aggravate any pre-existing condition; Dr. Rosenthal not only confirmed that Plaintiff was essentially completely immobilized for about ten days but also stated that use of a walker and crutches places significant strain on the shoulders. Both Plaintiff and his wife testified that he did not suffer from this condition prior to the accident. Furthermore, not only does sufficient material evidence support the trial court's inference of causation and his assessment of vocational disability, but T.C.A. § 24-7-114 abolishes the distinctions between treating and evaluating or examining physicians and between subjective and objective findings as bases for exclusion of such evidence; these are considerations going to the weight of such expert evidence. *See Haley v. Dyersburg Fabrics, Inc.,* 729 S.W.2d 665 (Tenn.1987). In any case,

> "[t]his Court is committed to the rule that when, without the fault of the employee, his original compensable injury is aggravated by medical or surgical treat-

ment of it, there is such a causal connection between the original injury and the resulting disability ... that [it is] compensable...."

*Forest Products v. Collins,* 534 S.W.2d 306, 309 (Tenn.1976).

Consequently, the finding of a causal connection between Plaintiff's injury and both his impotence and his shoulder impairment justified the Chancellor's award of additional medical benefits for past, unpaid expenses and for future treatment of the Plaintiff's erectile dysfunction. T.C.A. § 50–6–204 specifically provides that "[t]he employer or his agent shall furnish free of charge to the employee such medical and surgical treatment, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus ... made reasonably necessary by [the] accident ... as may be reasonably required...." An award of temporary total disability benefits during the recovery period following the penile implant surgery is also appropriate under the circumstances of this case.

■ As Defendant's last issue, the extent of vocational disability awarded by the trial court is challenged. Defendant attempts to limit the extent of vocational disability to the degree of anatomical impairment attributed to Plaintiff by the doctors in this case. Such a limitation is incontrovertibly not the law controlling legal or vocational disability under the Workers' Compensation Act. As observed in *Holder v. Wilson Sporting Goods Co.,* 723 S.W.2d 104, 107–108 (Tenn.1987), in which an award of 50 percent permanent partial vocational disability to an employee with a 7.5 percent anatomical impairment was affirmed, a clear distinction is made

" 'in worker's compensation cases between anatomical impairment as determined by a physician and disability to work which results from such impairment.' ... The extent of disability is a question of fact and the trial court's determination must be supported by material evidence to be sustained on appeal. To determine the extent of unscheduled legal disability ... the trial court considers 'many pertinent factors, including job skills, education, training, duration of disability, and job opportunities for the disabled, in addition to the anatomical disability testified to by medical experts.' ... The determination of the extent of unscheduled partial disability is measured by loss of earning capacity ... the same as for permanent total disability." (Citations omitted.)

*See also Owens Illinois, Inc. v. Lane, supra,* at 351; *Employers Insurance Co. of Alabama v. Heath,* 536 S.W.2d 341, 342–343 (Tenn.1976); *Forest Products v. Collins, supra,* at 309. To hold otherwise would obviously undermine the remedial nature of Workers' Compensation law. "When causal connection and permanency of the injury have been established by expert medical testimony, the trial judge is not bound to accept the doctors' opinions of the extent of the employee's disability." *The Trane Co. v. Morrison,* 566 S.W.2d 849, 851 (Tenn.1978). *See also Hinson v. Wal-Mart Stores, Inc., supra,* at 677.

■ In this case, Plaintiff was 52 years old at the time of the accident, had some college but no degree, had worked for the same employer for over 20 years, and did not have any other current skills than as a mechanic. His injury has left Plaintiff incapacitated to perform the duties of a mechanic as efficiently as he did prior to the accident. His ability to find employment on the open labor market, in view of his age, education, physical condition, and skills, is significantly impaired by his injury and "the all pervading purpose of the Workman's Compensation laws is to substitute compensatory income for loss of earning capacity." *Ware v. United States Steel Corp.,* 541 S.W.2d 107, 109 (Tenn. 1976) (citation omitted). The award of 35 percent permanent partial vocational disability is fully supported on this record.

Accordingly, we affirm the judgment of the trial court. Plaintiff's motion for award of damages for a frivolous appeal is denied. The costs are taxed to Defendant.

HARBISON, C.J., and FONES, COOPER and BROCK, JJ., concur.