**Cynthia J. LAMBERT, Plaintiff-Appellee,**

v.

**TRAVELERS INSURANCE COMPANY,
Defendant-Appellant.**

Supreme Court of Tennessee.

Dec. 30, 1981.

Joe Hailey, Selmer, for defendant-appellant.

James A. Hopper, Hopper & Plunk, P.C., Savannah, for plaintiff-appellee.

## OPINION

BROCK, Justice.

This is a worker's compensation case in which the defendant appeals from the decree of the Chancellor awarding benefits to the plaintiff-employee of 45% permanent partial disability to the body as a whole because of an occupational disease called allergic contact dermatitis. The defendant claims that the record does not contain material evidence to support the finding of the Chancellor that the plaintiff's disease arose out of and in the course of her employment; the plaintiff argues that the appeal is frivolous and that damages should be assessed against the defendant-appellant as provided by T.C.A., § 27–1–122.

The plaintiff, 20 years of age, began working for Aqua Glass, Inc., in Adamsville, Tennessee, in March, 1978. Aqua Glass, Inc., manufactured bathtubs and other items from fiberglass, resins and other chemicals. Plaintiff-employee was utilized in the Company's "roll department" where she came in close contact with fiberglass, resins and gel coat. After one and one-half months in this employment plaintiff suffered a severe rash on her arms, legs and other parts of her body. She had never suffered from a skin ailment prior to this time. In June, 1978, she had such a severe skin reaction that she was hospitalized for

treatment. Dr. Peeler, her family physician, treated her and diagnosed her condition as "allergic contact dermatitis." She responded to treatment and returned to work on July 1, 1978, but broke out in a rash on July 12, 1978, and was finally released from employment by Aqua Glass, Inc., on September 1, 1978. Dr. Peeler testified that the plaintiff's condition was caused by her exposure to fiberglass and other chemicals in the plant to which she was allergic.

Other testimony in the record indicates that the plaintiff sustained other skin eruptions (1) while walking past a construction site in Atlanta, Georgia, (2) while present in a room with fiberglass curtains, (3) when fiberglass was taken from the walls of her home, and (4) when she was exposed to fiberglass insulation around a water heater in her home.

In 1979 she was seen and treated by Dr. Jay Cooper, a dermatologist, who agreed with Dr. Peeler's diagnosis that the plaintiff's condition was "allergic contact dermatitis." Dr. Cooper further testified that he performed tests which showed that the plaintiff was allergic to a resin, a gel coat and at least one type of fiberglass, samples from plaintiff's work environment at Aqua Glass, Inc. Dr. Cooper testified as follows:

"A. An allergic contact dermatitis—to get more clinical, you have to have antibodies. The person is exposed to an allergen; he's allergic to the allergen, so he produces antibodies. And the reaction of the antibodies and the allergen produces the clinical reaction. In primary irritant contact antibodies, there is no allergy whatsoever. I just want to be clear on that.

"Q. In the case of Cynthia, she has allergic contact dermatitis?

"A. Yes, she has allergic contact dermatitis.

"Q. And in your opinion, what was the cause of that, Sir?

"A. I know that she is allergic to what I tested her to. Is that what you mean?

"Q. Yes Sir.

"A. I know that she is allergic to the resin, the gel coat, and to at least one kind of fiberglass. . . .

"Q. If she's removed from this type of chemicals, would she be likely to be faced with any problem?

"A. No, not unless she became allergic to something else. That's always a possibility.

"Q. Is the allergic contact dermatitis that Cynthia has—is it permanent in nature Sir?

"A. Yes.

"Q. And what do you mean by that?

"A. I think she will react to these chemicals probably forever."

This testimony of Dr. Cooper along with that of Dr. Peeler and the plaintiff herself fully supports the finding of the Chancellor that the plaintiff suffers from an occupational disease as defined by T.C.A., § 50–1101, that it arose out of and in the course of her employment with the defendant and that it has resulted in a 45% permanent partial disability to her body as a whole. Indeed, the employer, Aqua Glass, Inc., stated on the written work release given to the plaintiff that "Cynthia . . . still breaks out from this environment."

The record supports the Chancellor's finding that the plaintiff's condition meets each of the six conditions set out in Chapter 339 of the Public Acts of 1977, now codified as T.C.A., § 50–1101. The record does not support the insistence of the defendant that it is responsible only for the skin eruptions that were temporary and followed exposure to the chemicals to which she was allergic and which she encountered in her employment. Those were periods of temporary total disability, but the permanent partial disability remains. As we understand the testimony of the expert witnesses, the plaintiff, although she was potentially allergic to fiberglass, gel coat and resins, her body did not produce the antibodies in reaction to these allergens until she was exposed to them in her employment. Now,

for the rest of her life, her body will contain the antibodies and she will be subject to severe allergic reactions each time she comes in contact with these allergens. It is, of course, well settled that an employer takes an employee as he finds him or her and is liable under the Worker's Compensation Act for disabilities which are the result of the activation or aggravation of a pre-existing weakness, condition or disease brought about by the occupation. *Brooks v. Gilman Paint Company*, 208 Tenn. 595, 347 S.W.2d 665 (1961).

We find no error in the decree of the Chancellor and it is in all things hereby affirmed.

■ The plaintiff has invoked T.C.A., § 27–1–122, and petitions us to award damages against the defendant insurance company upon the ground that the appeal in this case was frivolous or taken solely for delay. Our review of the record including the transcript of evidence heard in the trial court, the decree and opinion of the Chancellor, the briefs of the parties filed in this Court, the oral argument of counsel, and the motion and affidavits filed with respect to this application for damages for frivolous appeal, convinces us that, indeed, this appeal was frivolous and that damages should be awarded. The only medical evidence in the record was produced by the plaintiff and was cited at some length by the Chancellor in his opinion; this medical testimony fully supports the finding of the Chancellor. In short, the appellant has cited no evidence or rule of law which even tends to entitle it to a reversal or to other relief from the decree of the Chancellor. Moreover, shortly following the entry of the Chancellor's decree and within the 30 days allowed for appeal, the defendant Travelers Insurance Company, by its check No. 56758095, paid to the employee and her attorney the sum of $9,035.55 representing that portion of the Chancellor's award of benefits for 45% permanent partial disability of the body as a whole which had accrued as of that date, thereby recognizing the validity and correctness of the Chancellor's decree. The defendant now seeks to avoid the effect of this payment by saying "that the issuance of the check to Cynthia J. Lambert and her attorney occurred through clerical error," without further elaboration.

We find that the appeal was frivolous and award to the appellee damages against the appellant to consist of all costs incurred on appeal, interest on that part of the Chancellor's award which had accrued at the time the appeal was perfected from the date of the appeal until such interest is paid, and expenses incurred by the appellee as a result of the appeal, including a reasonable attorney's fee the amount of which is to be determined by the Chancellor upon remand.

This cause is remanded to the Chancellor for such further proceedings as are consistent with this opinion.

HARBISON, C. J., and FONES, COOPER and DROWOTA, JJ., concur.