**Linda KILPATRICK, Plaintiff-Appellee,**

v.

**EMERSON ELECTRIC COMPANY,
Defendant-Appellant.**

Supreme Court of Tennessee.

Jan. 22, 1985.

Rehearing Denied March 11, 1985.

George C. Thomas, Thomas, Welles & Thomas, Dresden, for plaintiff-appellee.

Richard L. Dunlap, III, Paris, for defendant-appellant.

## OPINION

BROCK, Justice.

In this worker's compensation case the Chancellor found that the plaintiff had sustained an occupational disease while employed with defendant and awarded benefits for medical expenses, compensation for temporary total disability and compensation for permanent partial disability in the amount of 75% of the body as a whole. On this appeal the defendant questions only the award of 75% permanent partial disability benefits; defendant asserts that the evidence does not support permanent partial disability to the extent awarded. We affirm the decree of the Chancellor.

The only medical evidence in the record is the testimony of Dr. Robert L. Kaplan, a certified dermatologist, who examined and treated the plaintiff's allergy condition over an extensive period of time. He found the plaintiff to be allergic to Melcote No. 1, Melcote No. 2, rubber gloves, tetramethylthriuram disulfide, which is a compound used in the making of rubber, thiuram mix,

another compound used in the making of rubber products. These allergens occurred in the environment in which the plaintiff worked at the employer's factory. In addition to those items, Dr. Kaplan found that she was also allergic to acrylic monomer, a compound used in glues; cinnamic alcohol, which is used in perfumes; hexachlorophene, a disinfectant, and paraben mix which is a preservative used in some topical medications. These last four allergens did not occur in the work environment of the plaintiff. With respect to these last four allergens which were not work connected the doctor testified that "... they didn't contribute to her present condition." Dr. Kaplan testified that the plaintiff would be allergic to these various allergens for the remainder of her life.

Lay testimony of the plaintiff and her husband was to the effect that prior to her employment with the defendant the plaintiff had never experienced any allergies or dermatitis although she had on many occasions been exposed to rubber compounds and some of the other allergens above mentioned which now cause her to suffer dermatitis. Dr. Kaplan explained:

"Q. Now would you state whether or not a person can handle certain chemicals for a long period of time without being sensitive and then either gradually or subtly become sensitive to those agents?

"A. That is correct. We have subtle changes in our immune system where we can be exposed to something, for example, like nickel, which has been very common in other (our) environment for years, and all of a sudden we become allergic to it. We don't know exactly why we have these changes in our immune system, but it certainly is a fact of life.

\* \* \* \* \* \*

"Q. Do you have an opinion based upon a reasonable medical certainty as to the cause of Mrs. Kilpatrick's dermatitis that she is suffering from now?

"A. I know Melcote 1 and Melcote 2 and rubber were certainly causing this particular dermatitis."

Dr. Kaplan further testified that the plaintiff is disabled to work in any environment where the above mentioned allergens are present.

Dr. Lorne Semrau, a clinical psychologist, specializing as a vocational expert, testified that the plaintiff had an IQ of only 89 and functioned within "... the lower range of dull normal intelligent, slightly above borderline mental retardation." He further testified that considering the plaintiff's limited mental faculties and education and because of "... the type of products to which she is allergic and because of their use in the regional economy within the industrial force, that alone would eliminate her from at least 75% of the industrial work ..." available to her.

Other testimony is to the effect that the plaintiff attempted to return to her work with the defendant but had a severe allergic reaction and was unable to continue and that she attempted to attend a vocational school for retraining but in that environment also suffered a severe allergic reaction which forced her to quit.

The defendant offered no medical or other expert testimony to rebut the evidence, above outlined, which was presented on behalf of the plaintiff. The defendant complains that the opinion of Dr. Semrau with respect to the extent of plaintiff's disability was based, in part, upon her allergy to acrylic monomer, found in glues, cinnamic alcohol, used in perfumes, hexachlorophene, a disinfectant and paraben mix, a preservative, which were not found in her work environment with the defendant. But, in this regard, the plaintiff, in response to the defendant's own questions, testified as follows:

"Q. Now, has he told you that you are allergic to glue?

"A. Yes.

"Q. Do you blame that on Emerson Electric Company?

"A.   He said that was such a violent reaction that I had that it has caused more allergies because I have no resistance. It just broke down my whole system because I was so sick I couldn't even get out of bed. That's how violent it was. And he—and in his opinion he said yes, it did bring it on.

"Q.   All of those allergy problems that you have?

"A.   Yes, because I used to wear make-up a lot. I wore perfume. Now I cannot. I have wore make-up on occasions. And the doctor has fussed at me because I did have a rash and I had to take it off.

"Q.   So it is your position today that any allergy that you have is a result of this reaction to either the rubber or Melcote?

"A.   Yes."

Of course, this particular testimony of the plaintiff probably would have been objectionable but for the fact the defendant not only did not object to its introduction but affirmatively elicited the same. We regard it as probative, especially since it was not contradicted by Dr. Kaplan and since the plaintiff had not experienced allergy on coming in contact with these particular compounds prior to her exposure to Melcote 1 and Melcote 2 and rubber compounds in her work environment with the defendant.

In our opinion the evidence as a whole fully supports the findings and award made by the Chancellor and his decree is in all things affirmed.

The plaintiff-appellee insists that she is entitled to invoke the remedy afforded by T.C.A., § 27–1–122, on the ground that the appeal in this case is frivolous and was taken solely for delay. Our review of the evidence, the findings and decree of the Chancellor, the briefs the parties filed in this Court, and the oral argument of counsel convinces us that this appeal in fact was frivolous and that damages should be awarded. The appellant has cited no evidence or rule of law which tends to entitle it to a reversal or other relief from the decree of the Chancellor. Therefore, we find that the appeal was frivolous and award to the appellee damages against the appellant which shall consist of all costs incurred on appeal, interest on that part of the Chancellor's award which had accrued at the time the appeal was perfected from the date of the appeal until such interest is paid and expenses incurred by the appellee as a result of the appeal, including a reasonable attorney's fee, the amount of which is to be determined by the Chancellor upon remand. *Lambert v. Travelers Ins. Co.*, Tenn., 626 S.W.2d 265 (1981).

This cause is remanded to the Chancellor for such further proceedings as are consistent with this Opinion.

COOPER, C.J., and FONES, HARBISON and DROWOTA, JJ., concur.