IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JANUARY 17, 2006 Session

## JOSEPH MICHAEL HARRIS v. SUSAN TAYLOR

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-03-1967-3     D. J. Alissandratos, Chancellor**

_____

**No. W2004-02855-COA-R3-CV - March 28, 2006**

_____

This appeal stems from a suit to partition real estate. In this appeal, we are asked to determine if the chancery court erred when it granted summary judgment and a judgment on the merits based on stipulated facts, evenly splitting the proceeds of the sale of property between joint tenants with rights of survivorship where one joint tenant paid more than her equitable share of the purchase money. Specifically, the appellant contends that she was entitled to contribution from the appellee for the excess of the purchase price paid by her and that she did not make a gift of the excess. In addition, Appellant requests that she was entitled to a credit of $2,000 pursuant to an interim consent order disposing of numerous issues between the parties. The appellee has requested attorney's fees incurred as a result of this appeal. We affirm in part, reverse in part, and remand for further proceedings. We decline to award attorney's fees to the appellee.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

David A. Velander, Louisville, KY, for Appellant

S. Denise McCrary, Memphis, TN, for Appellee

## OPINION

### I. FACTS & PROCEDURAL HISTORY

Although never married, Susan Taylor ("Taylor" or "Appellant") and Joseph M. "Mike" Harris ("Harris" or "Appellee" or, collectively with Taylor, the "Parties") jointly purchased a residence in Cordova, Tennessee (the "Property") in January of 2000. The Parties financed the purchase of the Property by making a down payment of approximately $54,000 and borrowing $160,800 from First Tennessee Mortgage Co., Inc. Although Taylor paid the entire down payment on the Property, the sellers of the Property deeded the Property to the Parties as joint tenants with right of survivorship. The Parties lived together until December of 2001 when Harris moved out at Taylor's request. While both parties were living in the house, the Parties obtained a $10,000 home equity line of credit from First Tennessee Bank secured by a deed of trust on the Property (the "Home Equity Line of Credit"). The Parties borrowed $6,800 on the Home Equity Line of Credit to purchase an engagement ring for Taylor. Additionally, Taylor borrowed $2,000 on the Home Equity Line of Credit for her own personal use.

After moving out, Harris filed a complaint for partition on October 14, 2003. On November 7, 2003, Harris amended his complaint for partition. On November 21, 2003, Taylor filed her answer to the amended complaint and a counterclaim for declaratory judgment seeking the chancery court to declare the rights of the parties with respect to the Property. On June 11, 2004, Taylor filed a motion for summary judgment. On September 8, 2004, the Parties subsequently entered into a Consent Order Regarding the Sale for Partition of Real Estate and Other Matters, which resolved numerous issues between the Parties. At the hearing on Taylor's motion for summary judgment, the chancery court asked the Parties if they would rather have a trial on the merits of the case based on stipulated facts. The Parties consented to this request.

Thereafter, the chancery court rendered an order granting summary judgment and judgment on the merits. The chancery court ruled that Harris and Taylor had no written agreement as to the distribution of the proceeds from the sale of the house or as to the down payment on the house. Basing it decision on the express language of the deed and *Rivkin v. Postal*, No. M1999-01947-COA-R3-CV, 2001 Tenn. App. LEXIS 682 (Tenn. Ct. App. Sept. 14, 2001), the chancery court found that the deed controlled the Parties' respective rights to the Property and ruled that both parties were equally entitled to the net proceeds from the sale of the Property and that Taylor would not be entitled to an apportioned amount for the down payment made on the Property, any alleged appreciation to the Property, or alleged care and maintenance of the property.

## II. Issues Presented

Appellant timely filed her notice of appeal presenting the following issues for review:

1.     Whether the chancery court correctly decided how the proceeds of the sale of real property owned by the Parties as joint tenants with right of survivorship should be divided; and

2.     Whether Appellant is entitled to more money under the terms of the interim consent order entered September 9, 2004.

In addition, Appellee presents the following issue for review:

3.     Whether Appellee should be awarded attorney's fees incurred as a result of this appeal.

For the following reasons, we affirm in part, reverse in part the decision of the chancery court, and remand for further proceedings. We decline to award attorney's fees to Appellee.

## III. Standard of Review

This Court reviews findings of fact made by a trial court sitting without a jury under a *de novo* standard with a presumption of correctness for those findings. Tenn. R. App. P. 13(d) (2005). This Court reviews a trial court's conclusions of law *de novo* with no presumption of correctness. ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV. Discussion

### *A. Summary Judgment*

Before this Court analyzes the issues presented in this case, we must correct an error in the chancery court's decision which would affect this Court's analysis of the issues presented on appeal. When the chancery court entered its order disposing of the case, it granted both summary judgment to Appellant and rendered a judgment on the merits. However, by granting Appellant's motion for summary judgment, the chancery court would have disposed of all the issues in the case, and there would have been no need for a judgment on the merits.

From a review of the record, we conclude that the chancery court erred when it granted summary judgment. In its order, the chancery court stated that the Parties agreed that summary judgment would be appropriate, however, the Parties agreed to resolve their dispute with a trial on the merits based on stipulated facts. The chancery court then tried the case on the merits and rendered a judgment on the merits, but then, in the same order, inexplicably granted summary judgment to Appellant, which, if granted, would have reached the opposite result that the chancery court rendered from the trial on the merits.

We conclude that the chancery court erred when it granted summary judgment because Appellant's stipulation that the chancery court try the case as a trial on the merits based on stipulated facts effectively withdrew her motion for summary judgment. Accordingly, we reverse the decision of the chancery court granting summary judgment to Appellant.

### B.    *Splitting of Sale Proceeds*

On appeal, Appellant asserts that the chancery court erred when it found that the proceeds of the sale of the Property should be evenly split between the Parties. Specifically, Appellant contends that she should be entitled to a greater percentage of the sale proceeds because she made a down payment of approximately $54,000 on the Property and that she paid a greater percentage of the total amount of the mortgage payments due. We agree.

A joint tenancy is "[a] tenancy with two or more coowners who take identical interests simultaneously by the same instrument and with the same right of possession." BLACK'S LAW DICTIONARY 1505 (8th ed. 2004). "Partitioning the jointly-owned property should be consistent with the respective co-owners' interests as shown by the evidence." *Rivkin v. Postal*, No. M1999-01947-COA-R3-CV, 2001 Tenn. App. LEXIS 682, at \*35 (Tenn. Ct. App. Sept. 14, 2001) (citing Tenn. Code Ann. § 29-27-116). Generally,

> [t]he shares or interests of joint tenants are presumed to be equal, although the contrary may be shown by proof. Generally, the fact of a greater contribution to the purchase price by one joint tenant will not overcome the presumption of equality. The beneficial interest of a joint tenant who furnishes nothing for the purchase of the property, likewise, is generally precisely the same as that of his or her co-owner who furnishes all of the consideration for the purchase of the jointly held property.

48A C.J.S. *Joint Tenancy* § 24 (2004) (footnotes omitted).

While the interests of joint tenants are presumed to be equal, "in the case of a joint purchase of land, if one pa[ys] more than his half of the purchase money, a Court of Equity [will] hold the land bound for the excess." *Rankin v. Black*, 38 Tenn. (1 Head) 650, 658 (Tenn. 1858) (citing *Gee v. Gee*, 34 Tenn. (2 Sneed) 395 (Tenn. 1854)); *see also* 7 Tenn. Jur. *Contribution & Exoneration* § 11 (2005) ("Joint purchasers of land, where one party pays more than his share, stand in respect to the equity between them as partners, and the party paying the excess has the right to be reimbursed out of the land, and also have the debts paid for money jointly borrowed to pay on the land, before the other party . . . can have any part of the proceeds."); 7 Tenn. Jur. *Cotenancy* § 9 (2005) ("In adjusting the accounts between joint tenants after a sale of the land, a court of equity would hold it bound for an excess paid by any joint tenant, and, if one of the parties had become insolvent, he or his creditors would not be permitted to receive any part of the funds until the joint owner was reimbursed for the excess advanced above his half of the consideration."). This situation is "analogous to the law of

partnership by which, as between the partners, the capital must be equalized out of the partnership effects before the profits can be divided." **Rankin**, 38 Tenn. (1 Head) at 658.

In its order granting summary judgment and judgment on the merits, the chancery court found that the Parties had "equal standing to the corpus of the proceeds from the sale" of the Property and that Appellant would not be entitled to an apportioned amount for the down payment made on the Property, any alleged appreciation to the Property, or alleged care and maintenance of the property.

This Court is mindful that, in the chancery court's order granting summary judgment and judgment on the merits, the chancery court found that the case of **Rivkin v. Postal**, No. M1999-01947-COA-R3-CV, 2001 Tenn. App. LEXIS 682 (Tenn. Ct. App. Sept. 14, 2001), was "not exactly on point but [was] close enough for the Court to apply to the facts submitted to the Court in this cause."

In *Rivkin*, the plaintiff sought a partition of property that he jointly owned with the defendant as tenants in common with right of survivorship. *Id.* at *5-6. Originally, the plaintiff purchased this property and was sole owner of the property. *Id.* at *36. Thereafter, the plaintiff quitclaimed the property to his girlfriend and himself as tenants in common with a right of survivorship. *Id.* After the plaintiff filed suit, the parties agreed to sell the property. *Id.* The trial court awarded both parties equal shares of the proceeds. *Id.* The plaintiff asserted on appeal that the trial court erred by awarding the defendant any interest in the proceeds because the defendant failed to prove that the plaintiff intended to make a gift of any interest of the property to the defendant. *Id.* This Court found that the language of the quitclaim deed demonstrated an intent to convey ownership of the property to the defendant and the recording of the quitclaim deed was evidence of delivery. *Id.* at 37.

In this case, unlike the parties in *Rivkin*, Appellant never owned any interest in the property and then granted a subsequent portion of that interest in the property. Rather, the Parties were joint purchasers of the land from an unrelated third party who had the third party convey the purchased property to them as joint tenants with rights of survivorship. While Rivkin supports the proposition that a gift *inter vivos* has been made when an owner of real property conveys an interest to another in that real property by deed and then records the deed without any consideration for doing so, we find that rationale does not apply where a third party conveys property jointly to multiple parties who are purchasing the property, one of which has paid more than his or her equitable share of the purchase money. Therefore, we find *Rivkin* inapplicable in this case.

On appeal and at trial, both parties have vigorously argued as to whether Appellant's paying of the entire down payment constituted a gift to Appellee. As we have stated earlier, the deed conveying to the Parties joint tenancy with rights of survivorship was not conclusive evidence of a gift in this case. In this case, the only other evidence presented by Appellee contained in the record as to whether Appellant made a gift of the payment of Appellee's equitable share of the down payment was his respective denial of Appellant's assertion that a gift had not been made.

As we have previously stated,

> Two elements must be present in order to find a properly executed
> gift inter vivos. *Arnoult v. Griffin*, 490 S.W.2d 701, 710 (Tenn. Ct.
> App. 1972) (citing *Dodson v. Matthews*, 22 Tenn. App. 49, 117
> S.W.2d 969 (Tenn. 1938)). First, the donor must have the present
> intent to make a gift to the donee. *Id.* Intent is determined from the
> totality of the circumstances. *Id.* Second, the donor must deliver the
> gift to the donee. *Id.* For delivery to occur, the donor must "surrender
> complete dominion and control of the gift" to the donee. *Pamplin v.
> Satterfield*, 196 Tenn. 297, 265 S.W.2d 886, 888 (Tenn. 1954). To
> prove delivery, the donee must show "evidence free from personal
> interest and not equivocal in character that the property claimed was
> delivered to donee during the donor's life . . . ." *Atchley v. Rimmer*,
> 148 Tenn. 303, 255 S.W. 366, 369 (Tenn. 1923). "The testimony of
> the beneficiary of an inter vivos gift is not sufficient to establish the
> gift." *Union Planters v. Shepard*, No. W2002-01188-COA-R3-CV,
> 2003 Tenn. App. LEXIS 498, at *12 (Tenn. Ct. App. July 14, 2003)
> (citing *Atchley*, 255 S.W. at 369). Mere possession of the property at
> issue is not enough. *Id.* The donee must prove both intent and
> delivery by clear and convincing evidence. *Parsley v. Harlan*, 702
> S.W.2d 166, 173 (Tenn. Ct. App. 1985) (citing *Ingram v. Phillips*,
> 684 S.W.2d 954 (Tenn. Ct. App. 1984)).

*In re Estate of Greene*, No. W2004-02910-COA-R3-CV, 2005 Tenn. App. LEXIS 698, at *7-8
(Tenn. Ct. App. Nov. 7, 2005). Since the only evidence presented at trial other than the deed was
Appellee's denial of Appellant's assertion that a gift had not been made by Appellant of the down
payment paid by Appellant in excess of her equitable share, we conclude that Appellee has not
clearly and convincingly demonstrated that a gift had been made. *See Union Planters*, 2003 Tenn.
App. LEXIS 498, at *12 ("The testimony of the beneficiary of an inter vivos gift is not sufficient to
establish the gift.").

Thus, while the chancery court was correct in finding that the Parties had equal standing to
corpus of the proceeds because the Parties were joint tenants, it did not adjust the amounts entitled
to Appellant and Appellee because of the excess contribution by Appellant. Accordingly, we reverse
to determine the amount of contribution owed to Appellant by Appellee.[1]

---

[1] We are mindful that as of December of 2001, Appellant requested that Appellee move out of the Property.
This action constituted an ouster of Appellee, which entitled Appellee to one-half of the rental value of the Property.
SINGER, PROPERTY LAW, RULES, POLICIES, & PRACTICES 644 (3d ed. 2002) ("Joint tenants . . . *do* have a duty to pay rent
to their co-owners if they have *ousted* them." (emphasis in original)); *see generally* BLACK'S LAW DICTIONARY 1505 (8th
ed. 2004) (defining ouster as "[t]he wrongful dispossession or exclusion of someone (esp. a cotenant) from property (esp.
real property)"); TIFFANY, THE LAW OF REAL PROPERTY § 449 (3d ed. 1939) ("The exclusion of one tenant by his
(continued...)

### C. *Consent Order*

On appeal, Appellant asserts that she is entitled to a credit of $2,000 pursuant to the interim consent order dated September 9, 2004 because she paid more than $2,000 of the Home Equity Line of Credit. We take Appellant's assertions to mean that the chancery court erred when it failed to credit her an additional $2,000 when it split the corpus of the sales proceeds evenly. We disagree.

In this case, the Parties entered into the Home Equity Line of Credit so that Appellee could purchase an engagement ring for Appellant. This ring cost approximately $6,800. In addition to Appellee receiving the money from the Home Equity Line of Credit to pay for the engagement ring, Appellant received $2,000 from the Home Equity Line of Credit for her own personal use. In the Consent Order Regarding the Sale of Partition of Real Estate and Other Matters, the Parties settled the issue of which party would responsible for what portion of the balance of the Home Equity Line of Credit.

Paragraph 7 of the Consent Order Regarding the Sale of Partition of Real Estate and Other Matters specifically states, "Defendant, Susan Taylor shall pay two thousand dollars ($2,000.00) plus interest toward the Home Equity Line of Credit . . . less any payments that Defendant can establish that she has previously paid toward the Home Equity Line of Credit after receipt of the $2,000.00 off the credit line. . . ."

We cannot say that this provision of the consent order between the Parties entitles Appellant to a credit of $2,000. Rather, according to the consent order, Appellant must pay $2,000 towards the Home Equity Line of Credit and that she may deduct from the $2,000 owed the total amount she has previously paid on the Home Equity Line of Credit that is in excess of $2,000 plus interest. If Appellant has not previously paid in excess of $2,000 plus interest, she must pay an amount that will bring her total amount paid on the Home Equity Line of Credit to $2,000 plus interest.

Although the chancery court split the corpus of the sales proceeds evenly, it required Appellee to pay Appellant $3,000 pursuant to the consent order dated September 9, 2004. On appeal, Appellant has presented no argument as to how that amount was insufficient to encompass any credit Appellant may have accrued pursuant to the consent order dated September 9, 2004. All Appellant has asserted on appeal is that she has paid in excess of $2,000 on the Home Equity Line of Credit and that she is entitled to a credit of the entire amount by paying this amount. We find no evidence in the record before us to demonstrate that Appellant has paid more than the $2,000 plus

---

[1](...continued)
cotenants from the possession or enjoyment of the land is known as 'ouster.'"). When adjusting the amount of the proceeds entitled to Appellant and Appellee because of each party's individual contributions, this factor should be taken into consideration.

This Court is also mindful that Appellant waived her claims for any amount paid by her for improvements to the Property and for the care and maintenance of the Property and should not be considered when determining the amount of contribution by Appellant.

interest to satisfy the requirement of the consent order before Appellant would be entitled to a credit. Accordingly, we affirm the decision of the chancery court as to this issue.

### D. Attorney's Fees

On appeal, Appellee has requested that this Court award Appellee attorney's fees incurred as a result of this appeal "as there is no argument made by Taylor that would justify this Court's reversal of the trial court's decision." We take this statement to mean that Appellee is petitioning this Court for an award of damages for frivolous appeal predicated on section 27-1-122 of the Tennessee Code.

As we have previously stated,

> When it appears to this Court that an appeal is "frivolous or taken solely for delay, [we] may, . . . upon motion of a party . . ., award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal." Tenn. Code Ann. § 27-1-122 (2005). "A frivolous appeal is one that is devoid of merit, . . . or one that has no reasonable chance of succeeding. . . ." *Young v. Barrow*, 130 S.W.3d 59, 67 (Tenn. Ct. App. 2003) (citations omitted). For an appeal to have no reasonable chance of success, it must "require revolutionary changes in fundamental standards of appellate review" for this Court to reverse the trial court's decision. *Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977). Additionally, the appeal must "cite[] no evidence or rule of law which would entitle them to a reversal or other relief from the decree of the trial court." *Wells v. Sentry Ins. Co.*, 834 S.W.2d 935, 938 (Tenn. 1992) (citing *Kilpatrick v. Emerson Elec. Co.*, 685 S.W.2d 630, 632 (Tenn. 1985); *Lambert v. Travelers Ins. Co.*, 626 S.W.2d 265, 267 (Tenn. 1981)). However, "genuine disagreements regarding the facts or conclusions to be drawn form [sic] the facts provide a sufficient basis for an appeal and provide an appropriate basis for declining to award frivolous appeal damages." *In re Armster*, No. M2000-00776-COA-R3-CV, 2001 Tenn. App. LEXIS 797, at *56 (Tenn. Ct. App. Oct. 25, 2001) (citing *Anderson v. Dean Truck Line, Inc.*, 682 S.W.2d 900, 902 (Tenn. 1984); *Liberty Mut. Ins. Co. v. Taylor*, 590 S.W.2d 920, 922-23 (Tenn. 1979)). "Determining whether to award these damages is a discretionary decision." *Young*, 130 S.W.3d at 67 (citing *Banks v. St. Francis Hosp.*, 697 S.W.2d 340, 343 (Tenn. 1985)).

*In re Estate of Greene*, W2004-02910-COA-R3-CV, 2005 Tenn. App. LEXIS 698, at *12-14 (Tenn. Ct. App. Nov. 7, 2005).

Since Appellant was partially successful in her appeal, we conclude that her appeal was not frivolous.  Accordingly, we decline to award damages for frivolous appeal.[2]

## V.  CONCLUSION

For the foregoing reasons, we affirm in part, reverse in part the decision of the chancery court, and remand for further proceedings.  Further, we decline to award Appellee attorney's fees resulting from this appeal.  Costs of this appeal are taxed one-half to Appellant Susan Taylor, and her surety, and one-half to Appellee, Joseph M. Harris, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE

---

[2] If, however, Appellee was not petitioning this Court for the award of damages for a frivolous appeal but was petitioning this Court, in its discretion, to award attorney's fees, we decline to do so as well because of Appellant's partially successful appeal.